Crane *v.* State.

## CRANE *v.* STATE.

### (*Knoxville.*    November 12, 1894.)

PARDON.    *Suspension of sentence for application for pardon.*

    The execution of a sentence of imprisonment should not be suspended to enable the defendant to apply for pardon unless the Court believes that the case is a proper one for executive clemency and is willing to be understood by the Executive as recommending it. The Court is unable to find anything in the facts of this case which would, either in law or morals, justify any suspension of the sentence.

Case cited and distinguished: Allen *v.* State, M. & Y., 295.

---

FROM KNOX.

---

Appeal from Criminal Court of Knox County. T. A. R. NELSON, J.

J. H. WELCKER, H. H. INGERSOLL, and J. F. J. LEWIS for Crane.

Attorney-general PICKLE for State.

WILKES, J.    At a former day of the present term of this Court, the appeal of the defendant, Geo. S. Crane, was heard, and the judgment of the Criminal Court of Knox County was affirmed, resulting in the sentence of defendant, Crane, to imprisonment in the

State penitentiary for three years for bigamy. He is still in the jail of Knox County, not having been delivered to the keeper of the penitentiary to serve his sentence.

A petition is now filed, asking that the execution of his sentence be suspended until he can apply to the Governor of the State for a pardon.

The power of this Court to grant such a suspension in a proper case, is clearly given by § 6096, M. & V. Code, as follows: "In case of the conviction and sentence of a defendant to imprisonment, the presiding Judge may, in all proper cases, postpone the execution of the sentence for such time as may be necessary to make application to the executive for a pardon or commutation of punishment."

This power and discretion was exercised by this Court in the case of *Allen* v. *The State*, Martin & Yerger, 295. It is apparent, however, from a reading of the statute, that such power and discretion to suspend execution of sentence will only be exercised in proper cases, and it will not be extended to cases generally; otherwise, the course of justice would be impeded, and the Governor deluged with applications in all cases before the convicted person could be imprisoned. It therefore devolves upon us to look to the facts of this case as disclosed by the record and the petition and papers accompanying it, and determine whether this is a proper case.

It is pertinent to say, that the petition to suspend is supported by the affidavits and indorsements of

many good people of the city of Knoxville, includ-
ing the mayor, chief of police, prominent business
men, editors, clergymen, physicians, the clerk of this
Court, some attorneys, and one lady, in which they
substantially state, that during the residence of the
defendant in Knoxville, for about eight years, he has
been a quiet, orderly, respectable citizen, and, being
somewhat of a mechanical genius, has built up a
business at once profitable to himself and helpful to
the community, in designing and manufacturing sur-
gical appliances; that he has all the time been honest
in his dealings, and is a valuable member of society.
Recently, before his conviction, he was married to an
estimable lady in Knoxville, she being utterly ignorant
of his former marriage. The witnesses evince great
sympathy for this lady, placed in such an unfortunante
condition, and express an earnest desire that, so far
as possible, she may be relieved. In all their ex-
pressions of sympathy with the lady thus deluded,
the Court heartily joins. It is evident, however, that
the pardon of defendant, if it should be granted,
cannot ameliorate the condition of this good woman,
as a further continuance of their former relations
would be illegal unless defendant should be divorced
from his lawful wife and remarried to her. It is
intimated that this can be procured, but on what
grounds is not stated, and the Court is utterly un-
able to comprehend, upon what grounds a divorce can
be procured by the defendant. The deserted wife
might apply for and obtain such divorce, but why

Crane *v*. State.

she should desire to do so we cannot see, unless it be to furnish another instance of a woman willing to sacrifice her own life in order that the man who has betrayed her may be shielded from harm and freed from care.

The facts in the case are that, about eight years ago, defendant was a guest of his uncle, in Alexandria, Va., for about six months. At the same time, Addie Peverill was an inmate of the same house, being a niece of the uncle's wife. During their stay under the same roof, defendant seduced the young girl, then about sixteen years of age. Whether this was accomplished under promise of marriage, the record does not expressly disclose, but we can fairly infer that it was so done, from the fact that, at the earnest request of the girl's aunt, defendant returned to Alexandria from Knoxville, where he had gone, and married the girl, and lived with her for five or six days, when a child was born, the result of their previous illicit intercourse. Defendant immediately thereafter deserted the wife and child, and came to Knoxville, where he established himself in business, and has ever since remained and prospered, and gained the respect of his business associates and the public generally, and, as the record shows, has fared well, if not sumptuously. In the meantime, the wife, covered with the shame of her seduction and degraded by her desertion, returned with her babe to her father's house, and, from that time to the present, has remained

there, living by the fruits of her own labor or as a pensioner on her father's bounty. There is no evidence that, during the whole of this time, defendant has sent her a dollar for herself or her child, or even a kindly word.

· The petition says, with the sincerest feeling, that he was doing no moral wrong, and, without advice or appreciation of the crime in law, defendant entered into the marital relation again. The petition further states that, after the disclosure of the fruit of the illicit indulgence of petitioner and Miss Peverill, he consented to go through the marriage ceremony with her as a matter of form, etc. It appears that, after the second marriage, the father of the girl, and the aunt at whose home she was betrayed and deserted, came to Knoxville, and interviewed the defendant. What occurred between them is not fully disclosed. One good lady states that the father said his purpose in coming to Tennessee was not to convict the defendant, and send him to the penitentiary, but rather to get money from him, and that he regretted the prosecution and conviction. Granting this to be so, it but shows that the father considered that the marital relation still existed, and that the deserted wife and child had some claims upon the defendant for support and maintenance. It does not matter what he may have desired as to prosecution and punishment of the defendant, inasmuch as the public is interested that such offenses against the marital relation and against the decency

and good order of society shall not go unpunished. Whether the father obtained any money for the benefit of the wife and child does not appear.

This is the status of the case. If we decide this to be a proper case to suspend sentence, that suspension carries with it an intimation to the executive that, in the opinion of the Court, it is a proper case for the exercise of the executive clemency and the pardoning power.

Being always desirous of tempering justice with mercy, we inquire, Upon what tenable ground can we base such an implied recommendation? Can we place it upon the ground urged in the petition, that defendant is a prominent citizen and successful business man? This Court cannot be a respecter of persons. But, if it could, then, the more prominent the citizen, the more certain and sure should be his punishment when the guilt is clearly fixed, and has no extenuating circumstances, as in this case. Can it be on the idea set out in the petition that the first marriage was gone through with as a mere matter of form, after the fruits of the illicit intercourse were made apparent? This Court cannot, in any way, sanction the idea that a marriage, under any circumstances, is a mere *matter of form, but it is the most sacred of all relations, and not to be lightly regarded.* Be it said to the credit of the defendant, that when the result of his illicit relations were about to be made public, he did marry his victim so as to legitimate his offspring. It was thereafter his legal and moral duty

to remain constant to the woman who had trusted him with all she had—her honor—and this he solemnly promised at the altar to do, and this he should have done, even if his whole future had been a continuing act of penance for the indulgence of his passions and desires. What, then, shall we say of the fact that, immediately upon the birth of the child— his child—he left the mother in her disgrace, and the infant in its helplessness, while he went to other fields and flouished? We cannot base it on this idea. Can it be on the idea of shielding his last victim— good, virtuous, confinding woman as she is proven to be? A pardon could not legitimate their past relations, nor sanction their continuance. It is one of the hardships of crime that innocent women and helpless children do suffer more than the criminal himself. Every term this Court is compelled to tear men away from their wives and little ones, and consign them to imprisonment, or the gallows, leaving homes desolate and hearts broken. It is not a pleasant matter, but a stern duty we dare not and would not shrink from. This case does not present a case so sad as others coming under our observation almost daily.

We have deemed it proper to say this much in explanation of the reasons why we cannot grant the request of the petitioner, and of the good people of Knoxville who have interested themselves in defendant's behalf. While petitioners sympathize with the good woman who lives among them, and who deserves their

Crane *v.* State.

sympathy, they must not forget the desolate wife, who sits disgraced, deserted, and abandoned, at her father's home, when she ought to be at defendant's fireside as an honored wife; nor must they forget the child, who has never known the defendant's care or seen his face, and would hardly care to call him father.

We see no ground, in law or morals, upon which we can interfere with the sentence or stay its execution.