The People ex rel. George D. Forsyth, District Attorney, etc., Respondent, v. The Court of Sessions of Monroe County, Appellant.

A statute which in terms authorizes courts of criminal jurisdiction to suspend sentence in certain cases, after conviction, is not violative of the provision of the State Constitution (§ 5, art. 4) giving to the governor the power to grant reprieves and pardons.

The distinction between the two powers pointed out.

*It seems*, however, the legislature cannot authorize such courts to so limit the exercise of their discretion to inflict punishment when deemed proper, in a case where sentence has been suspended, as to make such exercise dependent upon compliance on the part of the person convicted with some condition that will require the court to try a question of fact before it can impose the punishment.

1894.] People ex rel. Forsyth *v.* Court of Sessions. 289

N. Y. Rep.]                    Statement of case.

The provision of the Penal Code (§ 12) as amended in 1893 (Chap. 279, Laws of 1893), which declares that a criminal court, in certain cases, "may, in its discretion, suspend sentence during the good behavior of the person convicted," does not express such a condition, and does not preclude the court from passing the proper sentence whenever it appears to it to be proper.

Where, therefore, a Court of Sessions, after a conviction of the crime of grand larceny, suspended sentence during good behavior, *held*, that this was within the jurisdiction of the court, and so that the granting of a writ of mandamus upon application of the district attorney, requiring said court to proceed to sentence and judgment, was error.

(Argued January 29, 1894; decided February 27, 1894.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made January 18, 1893, which affirmed an order of Special Term granting an application for a writ of peremptory mandamus, the substance of which, and the material facts are stated in the opinion.

*H. B. Hallock* for appellant. The Court of Sessions had power to suspend sentence upon Attridge during his good behavior. (*People* v. *Bradner*, 107 N. Y. 1; *In re Jennings*, 10 Hun, 301; *People* v. *Willett*, 102 N. Y. 251; Code Crim. Pro. §§ 22, 39; *Fuller* v. *State*, 1 Blackf. 66; *People* v. *Graves*, 31 Hun, 382; *People* v. *Whipple*, 9 Cow. 715; 1 Bishop's Crim. Pro. § 1124; *Comm.* v. *Dowdican*, 115 Mass. 136; *State* v. *Addy*, 14 Vr. 114; *Weaver* v. *People*, 33 Mich. 297; *Comm.* v. *Chase*, Thatcher's Crim. Cas. 269; *Fultz* v. *State*, 2 Sneed, 232; *Allen* v. *State*, Mart. & Yerg. 294; *People* v. *Reilly*, 53 Mich. 260; *Comm.* v. *Maloney*, 145 Mass. 205; *People* v. *Blackburn*, 6 Utah, 347; *Gibson* v. *State*, 68 Miss. 241; *State* v. *Hadley*, 110 N. C. 522; *Sylvester* v. *State*, 65 N. H. 193; *Rex* v. *Ryan*, Cox's Crim. Cas. 109; *Hinman* v. *People*, 1 Blackf. 66; *Fuller* v. *State*, 41 N. Y. 606; *Blend* v. *People*, 13 Hun, 266.) The common-law right vested in the courts to suspend sentence in criminal cases has not been taken away by any statute in this state (except only in murder cases, Code Crim. Pro. § 495); nor is the exercise of such right unconstitutional. (Penal Code,

§ 12 ; Code Crim. Pro. § 495 ; 1 Archibald on ·Crim. Prac. [8th ed.] 577, § 180 ; 1 Colby on Crim. Law, 390 ; 1 Chitty on Crim. Law, 699 ; 3 Whart. on Crim. Law [7th ed.], § 3395 ; Barbour on .Crim. Law [3d ed.], 806, 807 ; *Fitzgerald* v. *Quann*, 109 N. Y. 445 ; *Manning* v. *Beck*, 129 id. 16 ; Laws of 1893, chap. 279 ; Penal Code, § 12.) The Court of Sessions having the power .to exercise its discretion to impose sentence, or to suspend it during good behavior, this court cannot interfere with that discretion, even though it may think the discretion was improperly exercised. (High on Ex. Legal Rem. § 156.)

*Fred C. Hanford* for respondent. The Special Term is the proper tribunal in which to make this application. (Code Civ. Pro. §§ 2068, 2069.) There is practically no dispute as to the facts of this case ; therefore, if the motion be granted, a peremptory writ of mandamus should issue in the first instance. (Code Civ. Pro. §.2070.) The Court of Sessions has ample power to bring the accused before it for sentence at any time. (Code Crim. Pro. § 299.) The Court of Sessions has no power to suspend sentence, and any attempt to exercise that power is a nullity. (*People* v. *Brown*, 54 Mich. 15 ; *People* v. *Reilly*, 53 id. 262 ; *People* v. *Morisette*, 20 How. Pr. 118 ; *United States* v. *Wilson*, 46 Fed. Rep. 748 ; *People* v. *Blackburn*, 23 Pac. Rep. 759 ; Penal Code, §§ 12, 13 ; Code Crim. Pro. §§ 482, 483.) Suspension of sentence during good behavior is, in fact, a conditional pardon, the defendant being granted exemption from the punishment imposed for his crime, on condition that he thereafter obey the laws and lead an exemplary life. The pardoning power is vested solely in the governor. (*People* v. *Brown*, 54 Mich. 15 ; *People* v. *Reilly*, 53 id. 262 ; *People* v. *Morisette*, 20 How. Pr. 118 ; *U. S.* v. *Wilson*, 46 Fed. Rep. 748 ; *People* v. *Blackburn*, 23 Pac. Rep. 759.) Article 4, section 5 of the State Constitution provides that the governor " shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment, upon such

conditions and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons." Therefore, a suspended sentence in any case by a court, being a conditional pardon, is in conflict, and chapter 279, Laws of 1893, is unconstitutional. (Cooley on Const. Lim. 115; 26 Ala. 439; *State* v. *Sloss*, 25 Mo. 292; *State* v. *Todd*, 26 id. 175; 26 Ark. 74, 600.) The legislature, in passing chapter 279, Laws of 1893, have disregarded the express language of the Constitution. (*People* v. *Albertson*, 55 N. Y. 50; *Settle* v. *Van Evrea*, 49 id. 280; *Sweet* v. *Hulbert*, 51 Barb. 312; *In re Woolsey*, 95 N. Y. 135.) A mandamus issues to compel discharge of official duty by a public officer. (127 N. Y. 391; *People ex rel.* v. *Rice*, 129 id. 449; *U. S.* v. *Peters*, 5 Cranch, 115.) A suspension of sentence being unauthorized and a nullity, and chapter 279, Laws of 1893, being unconstitutional, a mandamus from this court is the proper remedy to compel the Court of Sessions to do the duty imposed upon it by the statutes of this state governing the case at bar, which duty said court refuses to perform. (*People ex rel.* v. *Court of Sessions*, 1 Park. Crim. Rep. 369.)

O'Brien, J. The question presented by this appeal is novel and important. The Supreme Court has by mandamus commanded the Court of Sessions to proceed to judgment in a criminal case and to pass sentence upon the defendant after conviction. The power of the court to grant the writ under the circumstances disclosed by the record is denied.

. On the 4th of March, 1892, John Attridge was convicted in the Court of Sessions of Monroe county, composed of the county judge and two justices of sessions, upon his own plea of guilty, of the crime of grand larceny in the second degree. The defendant was a clerk in a mercantile firm and the offense consisted in the appropriation to his own use of a sum of money which belonged to his employers and which came to his possession or under his charge by virtue of his employment. There were supposed to be certain mitigating circum-

stances connected with the transaction growing out of his youth, previous good character and otherwise that were presented to the court through a petition signed by numerous respectable citizens who prayed that his sentence be suspended. Three days after the conviction he was brought before the court and, the county judge presiding, sentenced him to imprisonment. The two justices of sessions dissented and announced as the judgment of the court that sentence be suspended. The defendant was remanded to the custody of the sheriff but discharged soon after from the commitment upon habeas corpus, granted by a justice of the Supreme Court holding a Court of Oyer and Terminer, on the ground that the sentence pronounced by the county judge, not having been concurred in by a majority of the court, was illegal. He was, however, remanded to the custody of the sheriff, to the end that the Court of Sessions might pronounce a legal sentence in the case. He was again brought before that court on the 14th of March and the judgment thereupon given that sentence be suspended during good behavior. The county judge dissented, and the defendant was thereupon discharged from custody. On the 27th of June following, the Supreme Court at Special Term, upon the application of the district attorney, granted a peremptory writ of mandamus commanding the Court of Sessions to proceed to judgment and to sentence the defendant to the punishment prescribed by law. The order granting the writ has been affirmed at the General Term.

The precise question involved, therefore, is the power of a court of record, possessing jurisdiction in criminal cases, to suspend judgment after conviction. The Court of Sessions is a court possessing superior criminal jurisdiction and common-law powers. (*People* v. *Bradner*, 107 N. Y. 1.) It possesses all the powers formerly exercised by superior courts of criminal jurisdiction in England, except so far as these powers have been changed or abrogated by statute. There can, I think, be no doubt that the power to suspend sentence after conviction was inherent in all such courts at common law. The practice

1894.] People ex rel. Forsyth *v.* Court of Sessions. **293**

N. Y. Rep.]  Opinion of the Court, per O'Brien, J.

had its origin in the hardships resulting from peculiar rules of criminal procedure, when the court had no power to grant a new trial, either upon the same or additional evidence, and the verdict was not reviewable upon the facts by any higher court. The power as thus exercised is described in this language by Lord Hale: "Sometimes the judge reprieves before judgment, as where he is not satisfied with the verdict, or the evidence is uncertain, or the indictment is insufficient, or doubtful whether within clergy. Also when favorable or extenuating circumstances appear and when youths are convicted of their first offense. And these arbitrary reprieves may be granted or taken off by the justices of gaol delivery, although their sessions be adjourned or finished, and this by reason of common usage." (2 Hale P. C. ch. 58, p. 412.) This power belonged of common right to every tribunal invested with authority to award execution in a criminal case. (1 Chitty Cr. L. [1st ed.] 617, 758.)

Without attempting to collate all the authorities on the subject, it is sufficient to say that the power to suspend sentence at common law is asserted by writers of acknowledged authority on criminal jurisprudence, by the uniform practice of the courts and numerous adjudged cases. (2 Hawk. P. C. ch. 51, § 8; 1 Bishop's Cr. Pro. § 1124; 4 Bl. Com. ch. 31; *People* v. *Graves,* 31 Hun, 382; *People* v. *Harrington,* 15 Abb. N. C. 161; *People* v. *Whipple,* 9 Cow. 715; *Carnal* v. *People,* 1 Park Crim. Repts. 262, 266; *Commonwealth* v. *Dowdican,* 115 Mass. 136; *State* v. *Addy,* 43 N. J. L. 114; *Weaver* v. *People,* 33 Mich. 297; *People* v. *Reiley,* 53 id. 260; *Commonwealth* v. *Maloney,* 145 Mass. 205; *Sylvester* v. *State,* 65 N. H. 193.) The courts below were of the opinion that section twelve of the Penal Code deprives the court in all cases of any discretion with respect to the imposition of the punishment prescribed by law. The language of that section is as follows: "The several sections of this Code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court authorized to pass sentence to impose the punishment prescribed." This provision was not intended to, and

294   People ex rel. Forsyth *v.* Court of Sessions. [Feb.,

Opinion of the Court, per O'Brien, J.      [Vol. 141.

did not, abrogate any power over the judgment which the courts possessed before. The provision is declaratory of the law as it·always existed, for it was always the· duty of the court to impose the punishment upon conviction, but this duty was never supposed to be inconsistent with the power to suspend the judgment till the next term of the court or indefinitely. Since the granting of the writ in· this case the above section of the Penal Code has been amended by chap. 279 of the Laws of 1893, by adding to it these words : " But such court may, in its discretion, suspend sentence, during the good behavior of the person convicted, where the maximum term of imprisonment prescribed by law does not exceed ten years, and such person has never before been convicted of a felony." It is admitted by the learned district attorney that this amendment, though passed since the writ in this case was· directed by the order, is applicable to this case, as the defendant in the indictment has not yet been sentenced, and, if brought before the court for that purpose, pursuant to the command of the writ, sentence may be suspended if the enactment is valid. He meets this difficulty, however, by strenuously insisting that the amendment encroaches upon the power of the governor to grant reprieves and pardons, which is exclusively vested in him under the State Constitution. (Con. art. 4, § 5.) There can be no doubt ·that if the amendment distributes any part of the pardoning power conferred upon the executive to some other department of the government, the legislation is in conflict with the Constitution and invalid. The power to suspend sentence and the power to. grant reprieves and pardons, as understood when the Constitution was adopted, are totally distinct and different in their origin and nature. The former was always a part of the judicial power. The latter was always a part of the executive power. The suspension of the sentence simply postpones the judgment of the court temporarily or indefinitely, but the conviction and liability following it, and all civil disabilities, remain· and become operative when. judgment is rendered. / A pardon reaches both the punishment prescribed for the offense and

the guilt of the offender. It releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. It removes the penalties and disabilities and restores him to all his civil rights. It makes him, as it were, a new man, and gives him a new credit and capacity. (*Ex parte Garland*, 4 Wall. 333; *U. S.* v. *Klein*, 13 id. 128; *Knote* v. *U. S.*, 95 U. S. 149.)

The framers of the Federal and State Constitutions were perfectly familiar with the principles governing the power to grant pardons, and it was conferred by these instruments upon the executive with full knowledge of the law upon the subject, and the words of the Constitution were used to express the authority formerly exercised by the English crown, or by its representatives in the colonies. (*Ex parte Wells*, 18 How. 307.) As this power was understood it did not comprehend any part of the judicial function to suspend sentence, and it was never intended that the authority to grant reprieves and pardons should abrogate or in any degree restrict the exercise of the power in regard to its own judgments that criminal courts had so long maintained. The two powers, so distinct and different in their nature and character, were still left as they were before, separate and distinct, the one to be exercised by the executive and the other by the judicial department.

We, therefore, conclude that a statute which in terms authorizes courts of criminal jurisdiction to suspend sentence in certain cases, after conviction, a power inherent in such courts at common law, which was understood when the Constitution was adopted to be an ordinary judicial function, and which ever since its adoption has been exercised by the courts, is a valid exercise of legislative power under the Constitution. It does not encroach in any just sense upon the powers of the executive as they have been understood and practiced from the earliest times. The power to suspend the judgment during good behavior, if understood as expressing a condition, upon the compliance with which the offender would be absolutely relieved from all punishment and freed from the power of

the court to pass sentence, is open to more doubt.    The legislature cannot authorize the courts to abdicate their own powers and duties or to tie their own hands in such a way that after sentence has been suspended they cannot, when deemed proper, and in the interest of justice, inflict the proper punishment in the exercise of a sound discretion. Nor can the free and untrammeled exercise of this power or the right to pass sentence according to the discretion of the court be made dependent upon compliance with some condition that would require the court to try a question of fact before it could render the judgment which the law prescribes.    The statute must not be understood as conferring any new power.    The court may suspend sentence as before, but it can do nothing to preclude itself or its successor from passing the proper sentence whenever such a course appears to be proper.    This, we think, is all that the statute intends, and that was the only effect of the judgment.    It is a power which the court should possess in furtherance of justice, to be used wisely and discreetly, and it is perhaps creditable to the administration of justice in such cases that while the power has always existed no complaint has been heard of its abuse. The order of the General and Special Terms should be reversed and the mandamus denied.

All concur.

Orders reversed.