## S. R. SPENCER and J. V. THOMAS *v.* STATE.

### (*Knoxville.*   September Term, 1911.)

1. CRIMINAL LAW.   Trial judge's suspension of judgment of conviction and sentence as a reformatory measure is void, and the judgment may be enforced at a succeeding term.

The execution of a judgment of conviction fining the defendant and sentencing him to imprisonment may be suspended by the trial judge by proper reservation made at the trial term, but only for purposes connected with the termination of the cause, and the order should state the cause or reason for the delay, so it may appear whether it be such as the law will recognize, and should specify the length of time for which it is to continue; and where it is apparent from the record that the stay of execution was granted by the trial judge solely as a disciplinary or reformatory measure, to secure future good behavior on the part of the prisoner, such stay of execution is merely void; and this being true, the trial court had the right and power, at a succeeding term, to order *capias* to issue to take the defendant into custody, to the end that he might serve his sentence.

Cases cited and approved: Allen v. State, M. & Y., 294, 298, 299; Fults v. State, 2 Sneed, 236; Whitney v. State, 6 Lea, 247; Allen v. State, 9 Lea, 651; Crane v. State, 94 Tenn., 98; State v. Dalton, 109 Tenn., 544; McCampbell v. State, 116 Tenn., 98, 109; Neal v. State (Ga.), 42 L. R. A., 190; Collins, Ex parte (Cal. App.), 97 Pac., 188; Vance, Ex parte (Cal.), 13 L. R. A., 574; Webb, In re (Wis.), 27 L. R. A., 356; Tanner v. Wiggins, 54 Fla., 203; Barker, In re (Neb.), 113 N. W., 197; Williams, Re (Ala.), 10 L. R. A. (N. S.), 1129; State v. Langham (Minn.), 127 N. W., 425; People v. Allen, 155 Ill., 61; People v. Barrett, 202 Ill., 287; People v. Brown, 54 Mich., 15, 27, 28; Neal v. State, 104 Ga., 509; State v. Abbott (S. C.), 70 S. E., 6; Peterson, Ex parte (Idaho), 113 Pac., 729; State v. Voss (Iowa), 8 L. R. A., 767.

Spencer v. State.

2. **SAME.   Judgment omitted to be entered upon verdict at trial term may be entered at a subsequent term; common law practice of suspension never existed here.**

While it is settled in this State that where by oversight judgment has not been entered in a criminal case upon the verdict at the trial term, it may and should be entered at a subsequent term, yet the common law practice of an indefinite suspension of judgment has never been recognized here, because the reason assigned for such practice does not exist here, where a new trial may be granted by the trial court, and upon its refusal, a full review of the facts and law may be had by appeal to the supreme court. (*Post, pp.* 67-70.)

Cases cited and approved:   Nolin v. State, 6 Cold., 14; State v. Miller, 6 Bax., 514; Greenfield v. State, 7 Bax., 18; Sharp v. State, 117 Tenn., 537.

3. **SAME.   Governor's power to grant conditional pardons covers indefinite suspensions of sentence by trial court at common law.**

The power, conferred by statute (Shannon's Code, section 7236) upon the governor, to grant pardons upon such conditions and with such restrictions and limitations as he may deem proper, not only covers the case of youths and the wrongly convicted in which the trial court could, at common law, indefinitely suspend sentence, but it covers the whole field of usefulness embraced by the common law rule as far as it applies to indefinite suspensions of sentence.   (*Post, pp.* 70, 71.)

Code cited and construed:   Sec. 7236 (S.); sec. 6102 (M. & V.); sec. 5261 (T. & S. and 1858).

## FROM HAMILTON.

Appeal in error from the Criminal Court of Hamilton County.—S. D. McReynolds, Judge.

125 Tenn.—5

LEWIS SHEPHERD and W. H. CUMMINGS, for Spencer and Thomas.

ATTORNEY-GENERAL CATES, for State.

MR. JUSTICE NEIL delivered the opinion of the Court.

In this case, in the trial court, judgement on a plea of guilty was entered against plaintiffs in error at the January Term, 1911, for fine and costs and imprisonment in the workhouse for thirty days for selling intoxicating liquors within four miles of an institution of learning, in violation of the statute upon that subject, but execution of the judgment or sentence was suspended during that term, and until and during the first day of the succeeding May term "unless the court shall, during the present term, or on the first day of the next term, otherwise order; and the court, by the consent of the defendant in person in open court, reserves the right to enforce said jail" (workhouse) "sentence, and to issue a *capias*, or other proper process, and to make all necessary and proper orders at any time during the present term, or on the first day of the next term of the court, for the enforcement or further suspension of such jail sentence."

On the first day of the next term an order was entered directing that the sentence of imprisonment be "suspended from day to day during this term of the court, unless otherwise ordered by the court, and

Spencer v. State.

without further orders are made by the court during this term the sentence will stand suspended until the first day of the next term." During that (May) term, however, it was brought to the attention of the trial judge that plaintiffs in error had again violated the law in the same manner complained of in the indictment under which the judgment of fine and imprisonment had been pronounced. Upon investigation of this matter, by the testimony of witnesses in open court, he found the charge sustained, and thereupon, on motion of the district attorney-general, caused to be entered an order "that said workhouse sentence herein be revived, and the clerk of the court shall issue a workhouse *capias* for said defendants, and they shall be placed in the custody of the workhouse authorities to carry out the sentence of the court." From this latter order the plaintiffs in error prayed an appeal to this court.

The contention on the part of the plaintiffs in error is that the term of the court having ended at which the original judgment was entered, it was beyond the power of the trial judge at a succeeding term to make the last order. The contention of the State is that the suspension of the execution of the order at the January term was beyond the powers of the trial judge, and merely void, and hence he should have caused a *capias* to issue to the end that the execution of the sentence might proceed, just as if the prisoners had escaped from custody after sentence.

There was undoubtedly a practice at common law of suspending the entry of judgment in criminal cases, after a verdict, on a plea of guilty, during the pleasure of the court, with the consent of the defendant, and subject to the power of the court to cause to be entered a judgment on the verdict or plea at any subsequent term whenever the judge deemed the interests of justice required it.   The origin of the practice is thus stated by Lord Hale: "Sometimes the judge reprieves before judgment, when he is not satisfied with the verdict, or the evidence is uncertain, or the indictment is insufficient, or doubtful whether within clergy; also when favorable or extenuating circumstances appear; and when youths are convicted of their first offense. And thus arbitrary reprieves may be granted or taken off by justices of gaol delivery, although their sessions be adjourned or finished; and this by reason of common usage."   Hale P. C., ch. 58, p. 412.   The rule had its origin at a time when the English courts of criminal law had no power to grant new trials, and their judgments were not subject to review on the facts by any higher court.   It was therefore humane, and, in the sense, necessary.   It cannot be necessary, however, in any jurisdiction where the same disabilities do not exist.   Nevertheless, it has been adopted and is now enforced in many of the States of our union, as may be seen from the cases cited in the note to *Ex parte St. Hilare*, (101 Maine, 522) as reported in 8 Am. & Eng. Anno. Cas., 385, and the notes to 12 Cyc., pp. 772–774, also the authorities cited in *People* v. *Court of Sessions,*

141 N. Y., 208, 23 L. R. A., 856, which case contains
quite a full discussion of the subject: see also *State
v. Crooke*, 115 N. C., 760, 29 L. R. A., 260. It is rec-
ognized in Illinois, but the power of indefinite suspen-
sion is there denied: *People v. Barrett*, 202 Ill., 287, 63
L. R. A., 82; *People v. Allen*, 155 Ill., 61, 41 L. R. A.,
473. It is repudiated in Michigan, *People v. Brown*, 54
Mich. 15, 27–28; in Georgia, *Neal v. State*, 104 Ga., 509,
42 L. R. A., 190; in South Carolina, *State v. Abbott*,70 S. E.,
6; and in Idaho, *Ex parte Peterson*, 113 Pac., 729; that is,
the power to suspend sentence during good behavior.
Everywhere, it is conceded the court has power to
suspend judgment for a limited time so as to enable
the prisoner to move for a new trial or in arrest of judg-
ment, or to enable the judge to better satisfy his own
mind as to what the punishment should be, and on
other similar grounds looking to a better enforcement,
or to the safeguarding, of the rights involved in the
particular controversy. In several States, however,
the suspension is for an indefinite time, and is used
as a disciplinary measure, keeping the prisoner subject
to the control of the court by future orders, and,
theoretically, under its observation, to secure future
good behavior. Of course, under this practice the
judgment of conviction may never be entered, and the
prisoner may go scot-free. It has been objected that
this indirectly results in the court's granting a pardon,
thus exercising powers that belong only to the chief
executive of the State. To this it has been replied,
with technical correctness, that a conviction involves

not only a verdict but also a sentence passed by the court, and until conviction the chief executive has no power to pardon. *People* v. *Fabian*, 192 N. Y., 443, 15 Am. & Eng. Ann. Cas., 100, and note; *People* v. *Court of Sessions*, supra. Nevertheless, the result effected is really the same. The substance of a power reposed in the chief executive is, by a technical device, appropriated by the courts. We do not doubt that much good is promoted by the practice, in individual instances, but it is open to much abuse, especially in large centres of population. In course of a very brief time it may place hundreds of men, engaged in an illegal business, in a city or county, under the personal power of a single man, the judge of the criminal court, their liberty being subject to his uncontrolled discretion. This, in our judgment is nothing short of despotism.

While in Tennessee we have held that when by oversight judgment has not been entered in a criminal case upon the verdict at the trial term it may be and should be at a subsequent term (*Nolin* v. *State*, 6 Cold., 14; *State* v. *Miller*, 6 Bax., 514; *Greenfield* v. *State*, 7 Bax., 18; *Sharp* v. *State*, 117 Tenn., 537), we have never recognized the common law practice of an indefinite suspension of judgment—and rightly. The reasons assigned for the practice by Lord Hale do not exist here. Provisions are made by our statutes not only for the granting of a new trial by the trial court, but also for a full review of the facts and the law on appeal to this court. So far as concerns the last reason assigned

Spencer v. State.

for the rule, the duty of leniency to youths for their first offense, this is fully covered by our statute which provides that: "The governor may grant pardons upon such conditions and with such restrictions and limitations as he may deem proper, and may issue his warrant to all proper officers to carry into effect such conditional pardon." Shannon's Code, sec. 7236. This statute not only covers the case of youths but the whole field of usefulness embraced by the common law rule as far as it applies to indefinite suspensions of sentence. It is true the power so devolved on the governor is very great, so indeed is the power to pardon, in every aspect, but it is placed there by the constitution; moreover he is under the constant observation of all of the people of the State, his term is brief, and any abuse of his powers can be quickly discovered, and punished by the withdrawal of confidence and support.

But the case we are dealing with is not one wherein the trial judge suspended the sentence or judgment, but one wherein, after the entry of the judgment he suspended the execution.

Even in those cases wherein the right to suspend the imposition of sentence is conceded a much stricter rule is administered where an effort is made by the trial judge to suspend the execution of a sentence already imposed. In *State of Iowa* v. *Voss*, 8 L. R. A., 767, it is said:

"The question in the case is a simple one and demands but brief discussion. The condition of the judgment puts its execution wholly within the discretion of the

court below, and whether that discretion be exercised with or without justice or reason. If it be the pleasure of that court, process may never be issued upon the judgment. The case is this: We find a judgment for a fine against defendant, which can only be enforced at the pleasure of the court. The judgment is thus suspended, and the State is defeated of the remedy provided by law upon the exercise of the pleasure of the district court. If the power to do this exists in a case of contempt, it must exist in all cases punishable by fine and imprisonment. The law is no respector of persons. One violator of law possesses no rights or immunities not held by another. It follows then, that all fines and penalties prescribed by law may be collected only when it accords with the pleasure of the court in which judgment is rendered therefor. The claim of the validity of the condition of the judgment leads to the most absurd results. It is hardly necessary to say that it is based upon no statute. . . . The court, in a proper case, may arrest judgment to attain to the ends of justice, but not to defeat the remedy sought by plaintiff, which is the effect of the order suspending the execution. If judgment be suspended, the action stands for disposition in the future as provided by law. In this case the action is disposed of,—is ended by judgment; and the plaintiff's remedy is indefinitely suspended, or wholly cut off, by the order suspending execution during the pleasure of the judge of the court. The distinction between suspending judgment and suspending execution is

obvious, and need not be further pointed out.   (Citing cases).   These are cases wherein sentence after the verdict was suspended,—a different thing from the suspension of execution after judgment on sentence. In our opinion, the order of the district court suspending execution is without the authority of law, and should be declared null and void."

In *In re Leslie Webb*, 27 L. R. A., 356, the supreme court of Wisconsin said:

"No legal reason appears to have existed to warrant the court in suspending its sentence, in whole or in part, after it had been pronounced, if it be conceded the court had such power.   The action of the court seems to have founded on the joint request of the prosecution and of the defendant, and to have been granted as a matter of leniency to the defendant.   While it may be said that the defendant is in no position to compalin or take advantage of the clemency of the court, the question at issue is one of power, involving serious considerations of public policy respecting the administration of criminal justice.   After the defendant had been convicted, and the sentence of the law in legal and proper form had been pronounced against him, it is difficult to understand upon what principle the court could further interfere in the premises.   The right of the court, for cause, within the exercise of a reasonable discretion, to postpone sentence or suspend sentence, as it is said, seems to be clear; but we think, both upon principle and authority, its right to suspend the execution of the sentence after it has been pronounced

cannot be sustained, except as incident to a review of
the case upon a writ or error, or upon other well es-
tablished grounds. After sentence given, the matter
within these limits would seem to be wholly within
the hands of the executive officers of the law. . . .
Here the execution of a sentence already pronounced
is indefinitely suspended, and it may be the pleasure
of the court never to direct execution, so that the sus-
pension has the practical effect of a pardon, or of
arrest of judgment indeterminate or final, without the
authority of law; and it has been likened to the incor-
poration into our criminal jurisprudence of the 'Ticket
of Leave System,' without any of its safe-guards,
leaving the convicted criminal subject to the mere
option or caprice of the judge, who may direct the
enforcement of the sentence after any lapse of time,
however great, or withhold it to the great detriment,
it may be, of the interests of the public,—a power
plainly liable to great abuse."

In *Tanner* v. *Wiggins*, 54 Fla., 203, 14 Am. & Eng.
Anno. Cas., 718, it was held that the trial court had
no power to suspend the execution of a lawful sentence,
except for the purpose of giving effect to an appeal,
or where cumulative sentences are imposed, and in
some cases of emergency or necessity. In *In re Barker*
(Neb., 113 N. W., 197), it was held that on the hearing
of an application to determine the sanity of a person
convicted of crime, the judge might stay execution of
the sentence when absolutely necessary, and that the
necessity for such stay must be determined by the

judge before whom the application is pending in the exercise of a sound legal discretion. To same effect is *Re John Williams* (Ala.), 10 L. R. A. (N. S.), 1129, and note. In *State* v. *Langham* (Minn.), 127 N. W., 425, it was held that there was a marked distinction between an order staying proceedings after sentence to enable the accused to perfect an appeal, and an order suspending sentence for no definite purpose other than to vest in the court subsequent disciplinary supervision over the conduct of the accused for an indefinite period; that trial courts, independent of statute have power to grant a stay of proceedings for a definite period after conviction, to enable the accused to perfect an appeal, or to take such other proceedings as may be deemed necessary in the protection of his rights.

The cases just referred to, indicate the general nature of the grounds on which an execution of the sentence may be postponed. The principle is that the postponement cannot be made except on some ground conducive to the more perfect execution of the final process or to the safeguarding and security of the prisoner's rights in respect of the particular litigation out of which has grown the judgment or sentence on which the execution is awarded. It cannot be stayed merely for the purpose of enabling the trial judge to hold the sentence *in terrorem* over the head of the prisoner to secure future good behavior.

We have several criminal cases in the State dealing with the subject.

In *Daniel Allen* v. *State*, M. & Y., 294, 298-299, a conviction for manslaughter, a motion was made in this court to suspend the execution of the judgment until the next term to enable the prisoner to apply to the governor for a pardon. The suspension was granted "until the further order of this court," and the prisoner was admitted to bail. In disposing of the matter the court said: "No reason has been shown or even offered why in this case bail should not be taken for the forthcoming of the party, at the time that may be directed by the court; and in common cases, where the party can give bail, reasonably to secure his appearance that he may be forthcoming, and subject to the sentence of the law, is all that the law requires. If bail cannot be given, or, what is the same thing, sufficient bail, then it would be the duty of the court to direct him to be kept in jail for safe custody during the time allowed for the procuring of his pardon."

In *Fults* v. *State*, 2 Sneed, 236, it appeared that the following order was entered in the trial court: "On motion of defendant David Fults, and for reasons appearing to the satisfaction of the court from the admission of the attorney-general and the evidence in the case, he is permitted to enter into recognizance to appear at the next term of this court and then undergo the imprisonment adjudged against him, and abide by and perform the sentence of the court". The defandant gave bail, and duly appeared at the next term of the court. It was thereupon ordered

that he be imprisoned in accordance with the judgment at the former term, and the defendant then appealed from this order. This court held that the order was properly made, saying: "We see nothing irregular in this proceeding, to which the defendant can except. There are many cases, no doubt, where it is necessary and proper to suspend the execution of the final judgment. For instance, where the prisoner has become *non compos* between the judgment and the award of execution; or, in order to give room to apply to the executive for a reprieve or pardon; or, in *special* cases where the necessity and propriety of such course are rendered evident to the mind of the court". The court added: "Now it is true that the order does not state for what cause the respite was granted. It were better no doubt that the cause be stated, that it may appear to be such as the law will recognize." See also *Whitney* v. *State*, 6 Lea, 247, approving these two cases. In *James Allen* v. *State*, 9 Lea, 651, it appeared the execution of the judgment had been postponed or suspended by the trial judge to enable the State to bring the prisoner to trial on another indictment, at the succeeding term, which case the prisoner had continued at the term in which the verdict was pronounced in the first case. The propriety of this practice was recognized by this court. The practice of suspending execution of the judgment in proper cases was recognized in *Crane* v. *State*, 94 Tenn., 98, although the motion was denied in that case on special grounds stated. It

appears from the two last paragraphs in the opinion
in *McCampbell* v. *State*, 116 Tenn., 98 and 109, that
the trial judge entered an order suspending the exe-
cution of the judgment of imprisonment, and on this
ground the State filed the record for error, and asked
for a correction. In disposing of this matter the
court said, speaking through Beard, C. J.: "The
trial court was without discretion as to the infliction
of this punishment upon conviction. It follows there-
fore that the order suspending this judgment was
erroneous, and will be corrected by a proper judgment
entered in this court."

In *State* v. *Dalton*, 109 Tenn., 544, it appeared that,
at the term of the circuit court of Wilson county,
Dalton was sentenced to confinement in the work-
house of the county for eleven months, and that at the
succeeding term an order was entered "remitting the
remainder of the imprisonment during the good be-
havior of the defendant." This order was held void
by this court for the reason, among other things,
that it was an invasion of the pardoning power be-
longing alone to the governor of the State. The
case last cited, and *McCampbell* v. *State*, supra, and
the principles stated herein, are conclusive of the
present controversy. The case of *Daniel Allen* v.
*State*, *Fults* v. *State*, *Whitney* v. *State*, *James Allen* v.
*State*, and *Crane* v. *State*, recognize the right of the
trial judge indeed to suspend the execution by proper
reservation made at the trial term, but only for pur-
poses connected with the termination of the cause,

and *Fults* v. *State* strongly intimates, which we hold the only correct and true practice, that the order should state the cause or reason for the delay, and, we add, should specify the length of time for which it is to continue.

In the present case it is apparent from the record that the trial judge granted the stay of execution solely as a reformatory measure, to secure future good behavior on the part of the prisoner. His motives, it is apparent, were of the highest character, based wholly upon a desire to subserve the public welfare. However, he exceeded his powers. We therefore hold that the stay of execution was merely void. This being true he had the right to cause a *capias* to issue to take the plaintiffs in error into custody, to the end that they might serve their sentence. *Neal* v. *State* (Ga.), 42 L. R. A., 190; *Ex parte Collins* (Cal. App.), 97 Pac., 188; and see *Ex parte Vance* (Cal.), 13 L. R. A., 574, and note.

It results that the plaintiffs in error's appeal must be dismissed and the cause remanded to the trial court for execution of the sentence.