486 P.2d 247

The STATE of Idaho, Plaintiff-Appellant,

v.

Eugene L. McCOY, Probate Judge for Twin Falls County, State of Idaho, Defendant-Respondent.

No. 10783.

Supreme Court of Idaho.

June 25, 1971.

<hr />

W. Anthony Park, Atty. Gen., Martin R. Ward, Deputy Atty. Gen., Boise, and Robert W. Galley, Pros. Atty., Twin Falls, for plaintiff-appellant.

May, May, Bennett & Sudweeks, Twin Falls, for defendant-respondent.

SPEAR, Justice.

This appeal presents one question for our consideration: the validity of I.C. § 49–1102(d) as amended by the 1970 Legislature.[1] The statute as amended will hereafter be referred to as I.C. § 49–1102(d). In proceedings below, the probate court refused to effect the provisions of this statute and the district court quashed an Alternative Writ of Mandate which would have compelled the probate

court to enter judgment in accordance with the statute. The state has appealed this decision of the district court and asserts the validity of the statute in issue and the power of the legislature to enact it.

On June 24, 1970 Ernesto Medina was adjudged guilty of driving while under the influence of intoxicating liquor, an offense committed on June 4, 1970. Judge McCoy of the Probate Court of Twin Falls County fined Medina $175.00 and $5.00 court costs and sentenced him to thirty days in the county jail. The probate judge then suspended $125.00 of the fine and the entire jail sentence and placed Medina on probation for six months, despite I.C. § 49–1102(d) which provided a mandatory minimum ten day jail sentence upon a conviction for this offense.

The prosecuting attorney of Twin Falls County submitted a petition for writ of mandate to the district court on July 15, 1970. In his petition, the prosecuting attorney moved that the district court direct the probate court to sentence Medina to at least ten days in the county jail. An alternative writ of mandate was issued the following day in which the district court ordered the probate court to either sentence Medina according to the statute or show cause why the sentence should not be imposed.

A hearing was held on July 28, 1970 and judgment issued from the district court on August 7, 1970 quashing the alternative writ of mandate previously issued. The district court held that I.C. § 49–1102(d) conflicted with the legislative intent that the courts should have the power to grant

<hr />

1. Ch. 264, § 2 [1970] Idaho Session Laws 701.

   "(d) Every person who is convicted of a violation of this section shall be punished by imprisonment in the county or municipal jail for not more than six (6) months or by fine of not more than three hundred dollars ($300) or by both such fine and imprisonment. Every person convicted under this section shall serve at least ten (10) days in the county or municipal jail and this sentence shall be mandatory on every judge of

   every court of the state of Idaho without any right to exercise judicial discretion in said matter, except that the judge may allow said jail sentence to be served within a six (6) week period from the date of conviction in segments of time not less than one (1) day consisting of twenty-four (24) hours at each time. On a second or consequent conviction he shall be imprisoned in the state penitentiary for not more than five (5) years."

probation in criminal cases found in the 1970 amendments to I.C. § 19–2601.[2] I.C. § 49–1102(d) was also found to be contrary to Art. II, § 1[3]; Art. III, § 19[4]; and Art. V, § 13[5] of the Constitution of the State of Idaho. The district court further held the statute in question to be an infringement on judicial power and authority.

The state has appealed, challenging these conclusions of the district court. In its argument to this court the state asserts that the legislature has the constitutional authority to determine what the sentence for the various crimes shall be and such authority includes the power to prescribe mandatory sentences. The state further contends that the judiciary has no inherent power to suspend sentence; and while the courts may have had power to suspend sentence at common law, the common law can be amended by statute and this power abrogated.

The common law of England has been recognized in this state since early history, and this was tacitly recognized in the adoption of our constitution. State ex rel. Rich v. Idaho Power Co., 81 Idaho 487, 346 P.2d 596. (1959). Our statutes also specifically declare the efficacy of the common law. I.C. § 73–116[6]. This statute, furthermore, leaves it indisputable that al-

though the common law is accepted as part of the law of this state, it is subject to modification by the legislature.

Since this case raises the issue of the nature and extent of the power vested in the judiciary and reserved to it, inviolate, by Article II, § 1 and Article V § 13 of the constitution, we shall look initially to the powers possessed by the judiciary at common law. The Constitution of the State of Idaho does not specifically enumerate those powers reserved to this separate department of the government. Our research has disclosed many decisions from other jurisdictions in cases presenting questions similar to this which discussed the extent of the power of the judiciary to suspend sentence at common law. The courts have decided the issue both ways, many of them interpreting the same authority differently. In Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916), the Supreme Court held that a United States District Court had improperly suspended sentence in a criminal case for the purported reason that there was no inherent power in the judiciary to suspend sentence. Construing two authorities on the English common law, the Court concluded no such power existed there. The first passage relied upon by the Court is from Hale's Pleas of

2. Ch. 143, § 3 [1970] Idaho Session Laws 428.

3. "§ 1. Departments of government.— The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

4. "§ 19. Local and special laws prohibited.—The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:
   *      *      *      *      *
   "Creating, increasing or decreasing fees, percentages, or allowances of public officers during the term for which said officers are elected or appointed."

5. "§ 13. Power of legislature respecting courts.—The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution.

6. "Common law in force.—The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state."

the Crown, Vol. 2, ch. 58, p. 412, which states:

> "Reprieves or stays of judgment or execution are of three kinds, viz:
>
> "I. Ex mandato regis. * * *
>
> "II. Ex arbitrio judicis. Sometimes the judge reprieves before judgment, as where he is not satisfied with the verdict, or the evidence is uncertain, or the indictment insufficient, or doubtful whether within clergy; and sometimes after judgment, if it be a small felony, tho out of clergy, or in order to a pardon or transportation. Crompt. Just. 22b, and these arbitrary reprieves may be granted or taken off by the justices of gaol-delivery, altho their sessions be adjourned or finished, and this by reason of common usage. 2 Dyer, 205a, 73 Eng. Reprint, 452.
>
> "III. Ex necessitate legis, which is in case of pregnancy, where a woman is convict of felony or treason."

The second quote is found in Blackstone's Commentaries on the Law, Bk. 4, ch. 31:

> "The only other remaining ways of avoiding the execution of the judgment are by a reprieve or a pardon; whereof the former is temporary only, the latter permanent.
>
> "I. A reprieve (from reprendre, to take back) is the withdrawing of a sentence for an interval of time; whereby the execution is suspended. This may be, first ex arbitrio as, where the judge is not satisfied with the verdict, or the evidence is suspicious, or the indictment is insufficient, or he is doubtful whether the offense be within clergy; or sometimes if it be a small felony, or any favourable circumstances appear in the criminal's character, in order to give room to apply to the Crown for either an absolute or conditional pardon. These arbitrary reprieves may be granted or taken off by the justices of gaol delivery, although their session be finished, and their commission expired; but

this rather by common usage, than of strict right."

In its opinion, the Court seems to have focused on Blackstone's qualification that a reprieve is only temporary and concluded that therefore the English courts only had power to temporarily stay execution of judgment. However, Hale makes no such qualification in his work and we believe his comments are subject to the contrary interpretation, thus supporting those courts which have held that the judiciary possesses the power to permanently suspend sentence.

Following the above interpretation of Hale, the Court of Appeals of the State of New York concluded that its courts had the power to suspend sentence in criminal cases. People ex rel. Forsyth v. Court of Sessions, 141 N.Y. 288, 36 N.E. 386 (1894). Quoting Hale, the author of the opinion stated:

> " * * * There can, I think, be no doubt that the power to suspend sentence after conviction was inherent to all such courts at common law. The practice had its origin in the hardships resulting from peculiar rules of criminal procedure, when the court had no power to grant a new trial, either upon the same or additional evidence, and the verdict was not reviewable upon the facts by any higher court. The power, as thus exercised, is described in this language by Lord Hale: 'Sometimes the judge reprieves before judgment, as where he is not satisfied with the verdict, or the evidence is uncertain, or the indictment is insufficient, or doubtful whether within clergy; also, when favorable or extenuating circumstances appear, and when youths are convicted of their first offense. And these arbitrary reprieves may be granted or taken off by the justices of gaol delivery, although their sessions be adjourned or finished; and this, by reason of common usage.' 2 Hale, P.C. c. 58, p. 412. This power belonged, of common right, to every tribunal invested with authority

to award execution in a criminal case. 1 Chit. Cr. Law, (1st Ed.) 617, 758."

Other decisions in which courts have reached a similar result are: Gehrmann v. Osborne, 79 N.J.Eq. 430, 82 A. 424 (1912); Weber v. State, 58 Ohio St. 616, 51 N.E. 116 (1898); People v. Goodrich, 149 N.Y. S. 406 (Sup.1914). In Spencer v. State, 125 Tenn. 64, 140 S.W. 597 (1911) the court, relying on Hale, determined that the right to suspend sentence had existed at common law, but concluded that such a practice had never been followed in that state.

■■■■ We conclude from these authorities that the judiciary possessed the power at common law to suspend sentence. However, this does not, standing alone, nullify the statute under consideration for it is clear that the common law can almost always be overturned or modified by the legislature. I.C. § 73–116. If the common law was recognized as the law of this state at the time the constitution was adopted, State ex rel. Rich v. Idaho Power Co., supra, we must also conclude that the powers reserved to the several departments, but not enumerated, must be defined in the context of the common law. Were we deliberating upon a matter of substantive law, there would be no doubt that the legislature has effected a valid change in the common law. However, this is a consideration of much greater dimension. The constitution provides that the judiciary is a department separate from the others and that the " * * * legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government * * *" But, this document does not explicitly delineate what those powers shall be. For this reason we must go beyond the constitution itself to discover what were the powers held peculiarly by the judiciary. In this light, we perceive that the authority possessed by the courts to sentence necessarily includes the power to suspend the whole or any part of that sentence in prop-

er cases and this is more than a bare rule of substantive law subject to change by the legislature. Rather, it is in the nature of an inherent right of the judicial department and one which the separation of powers concept in our system of government places above and beyond the rule of mandatory action imposed by legislative fiat.

Additionally, comon sense tells us that this must be so. Our system of laws, indeed, hopefully our civilization, has undergone a persevering evolution toward enlightenment. A judge is more than just a finder of fact or an executioner of the inexorable rule of law. Ideally, he is also the keeper of the conscience of the law. It is for this reason that the courts are given discretion in sentencing, even in the most serious felony cases, and the power to grant probation. We recognize that rehabilitation, particularly of first offenders, should usually be the initial consideration in the imposition of the criminal sanction. Whether this can be better accomplished through the penal system or some other means, it can best be achieved by one fully advised of all the facts particularly concerning the defendant in each case and not by a body far removed from these considerations. Doubtless, legislation in the interest of the safety on our highways is for a salutory purpose. This legitimate end cannot be met, in addition to the other goals which must be sought within the law, by removing from the purview of the trial court consideration of the merits of each offense and offender. This statute provides for no exception in the case of the infirm, one driving in an emergency, nor for a pregnant woman. It not only abrogates the power of the court to suspend sentence when the circumstances and good conscience might justify such action; it also removes any authority to impose a lighter sentence.

This court has in the past been very circumspect in protecting the autonomy envisioned for the judiciary within our constitution. In Application of Kaufman, 69

Idaho 297, 206 P.2d 528 (1949), the court had before it a statute which granted admission to the bar of this state to any person who had been graduated from the University of Idaho School of Law (Ch. 73, § 1 [1949] Idaho Session Laws 126). Despite a showing of a history of legislation purporting to control the Idaho State Bar, this court overturned the statute as an invalid interference with judicial authority. In that case, as in this, there was no clear grant of authority stated in the constitution itself. The court was persuaded by the fact that control and administration of the organized Bar had always been recognized as a function peculiar to the judiciary.

In R.E.W. Const. Co. v. District Court of the Third Jud. Dist., 88 Idaho 426, 400 P.2d 390 (1965), this court confirmed the inherent authority vested in the judiciary to pass rules of procedure. This decision was reached in spite of the provision in Article V, § 13 stating " * * * but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court * * *"

This court always must be watchful, as it has been in the past, that no one of the three separate departments of the government encroach upon the powers properly belonging to another. Thus we reach the decision in this case both as a matter of construction of the constitution of this state and to effect a more rational application of law and policy. Therefore, that portion of I.C. § 49-1102(d) providing:

"(d) * * * Every person convicted under this section shall serve at least ten (10) days in the county or municipal jail and this sentence shall be mandatory on every judge of every court of the state of Idaho *without any right to exercise judicial discretion in said matter*, except that the judge may allow said jail sentence to be served within a six (6) week period from the date of conviction in segments of times not less than one (1)

day consisting of twenty-four (24) hours at each time. * * *" (emphasis added)

is unconstitutional and therefore null, void and unenforceable.

Judgment of the district court quashing alternative writ of mandate affirmed.

McQUADE, C. J., and DONALDSON, J., concur.

McFADDEN, Justice (dissenting).

The majority opinion concludes that I.C. § 49-1102(d), as amended by S.L.1970, Ch. 264, § 2, is unconstitutional as being a legislative encroachment on the inherent powers of the judiciary. It is from this conclusion that I dissent.

It is to be kept in mind that defining the limits of authority of the three departments of government, Idaho Const. art. 2, § 1, is one of great importance and delicacy, and this court must exercise special caution in this area. In Leonardson v. Moon, 92 Idaho 796, 451 P.2d 542 (1969) in discussing the constitutionality of a legislative enactment, this court stated:

"In arriving at this conclusion, we are reminded of certain fundamental principles of constitutional law: (1) In determining the constitutionality of a legislative enactment, fundamental principles must ever be kept in mind and rigidly observed. Statutes are presumed valid and all reasonable doubts as to constitutionality must be resolved in favor of validity. (2) When a statute is susceptible to two constructions, one of which would render it invalid and the other would render it valid, the construction which sustains the statute must be adopted by the courts. (3) The burden of showing unconstitutionality of a statute is upon the party who asserts it and invalidity must be clearly shown. (4) It is the duty of the courts to uphold the constitutionality of legislative enactments when that can be done by reasonable construction. (5) Unlike the federal constitution, the state constitution is a limitation, not a grant, of power. We look to

the state constitution not to determine what the legislature may do, but to determine what it may not do. If an act of the legislature is not forbidden by the state or federal constitution, it must be held valid. [citations.]" 92 Idaho at 806, 451 P.2d at 552.

The statute in question is the result of a public policy decision of the state legislature. That body has recognized that the operation on the highways of vehicles by persons who are under the influence of intoxicating liquor constitutes a menace to other users of the highways and to themselves. In an attempt to meet this problem the legislature considered that the ten day jail sentence would be of sufficient deterrent effect to reduce this hazard on the highways.

Turning to the issue at hand, the question of whether or not courts have an inherent power to suspend criminal sentences has received widely divergent answers by state appellate courts. However, the decisions of those courts that have concluded there is such an inherent power, in my opinion failed to fully consider the issue and have tended to assume the authority existed, or have without discussion deferred to the wishes of the legislature.

The starting point for an analysis of the general proposition that courts do not have inherent authority to suspend sentences is the case of Ex parte United States, 242 U. S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916, per White, C. J.), viewed as not controlling by the majority opinion today. In that case the federal trial judge had suspended the execution of a prison sentence over the objection of the prosecution. The shortest sentence prescribed by the applicable statute for the convicted criminal defendant was five years. The government applied for a writ of mandamus directed to the trial judge, requiring him to vacate the order suspending the sentence and instead, impose a sentence which accorded with the minimum punishment set forth in the statute. The Supreme Court in a unanimous

decision agreed with the government's contentions.

That opinion discussed the history of common law courts in this area and concluded, after reciting from Hale's Pleas of the Crown, Vol. 2, Ch. 58, p. 412, and from 4 Blackstone, Ch. 31, pp. 394–395, that

"While it may not be doubted under the common law as thus stated that courts possessed and asserted the right to exert judicial discretion in the enforcement of the law to temporarily suspend either the imposition of sentence or its execution when imposed to the end that pardon might be procured, or that a violation of law in other respects might be prevented, we are unable to perceive any ground for sustaining the proposition that, at common law, the courts possessed or claimed the right which is here insisted upon." 242 U.S. at 44, 37 S.Ct. at 75, 61 L.Ed. at 141.

I am not persuaded by the majority's placing such great weight on a distinction between Hale and Blackstone. It is a principle of analysis in judicial opinions that one looks to earlier cases to see what key issues were resolved by the decisions. What is apparent from a reading of the brief passages on point by Hale and Blackstone as well as gaining some insight from Holdsworth, "A History of English Law," is that early common law courts dealt with a system of criminal justice which by our standards was unresponsive, harsh, and unwieldy. The abuses are well known to students of the law. Because of the ingrained abuses of the system we know that the more humanitarian judges of those early days conjured up various fictions to alleviate the otherwise rigid structure of the criminal law. It does not appear from any of the authorities cited above or in Ex parte United States that the issue presented here was squarely faced by those early justices. What becomes apparent is that a practice of suspending sentences grew up and was tolerated but never attained a quasi-constitutional status not subject to

question. Thus, it is my view that the best that can be said about the common law is the question was unresolved.

In Ex parte United States the Supreme Court examined the relevant state court decisions. The majority of states which had decided the question denied the existence of the power. Those cases to the contrary were, in the Supreme Court's view, weakened by unjustified reliance on erroneous authority or decisions merely recognizing established practice. The United States Supreme Court, relying on the Idaho decision, In re Peterson, 19 Idaho 433, 113 P. 729 (1911), put this state in the majority camp. The majority opinion has not discussed this or other Idaho decisions to which I now turn.

In re Peterson involved a criminal conviction on a guilty plea. The trial judge sentenced defendant to six months in jail plus a fine and costs. However, if the fine and costs were paid the six months confinement was suspended until further court order. On the same day the same defendant pleaded guilty to a similar charge and received a similar sentence. The defendant the next day paid both fines and walked out a free man.

Somehow commitments were issued to the local sheriff on both charges, each with copies of the judgments; however, those judgments failed to contain mention of the suspension of the sentences. The sheriff several days later took defendant into custody and defendant initiated a habeas corpus proceeding. The opinion discussed two cases which had declared that the trial courts abused their sentencing powers by making revocation of a suspended sentence purely a matter of unbridled discretion of the judge or prosecutor. In that case the court said no conduct on defendant's part was alleged which would contravene a condition of suspension. No hearing on the revocation was held. Indeed, there were no conditions specified in the sentence by which defendant was to abide.

This court viewed the events as an attempt "to hang the sentence of six months' imprisonment over the head of the defendant to be executed at such time as the court or judge might require." 19 Idaho at 439, 113 P. at 730–731. The uncertainty of the sentence was viewed as abusive.

This court's decision in *Peterson* was that the defendant be released from custody and be free from any further confinement. In effect the opinion invalidated the attempt by the district judge to impose any kind of suspended sentence. To understand the import of this result to our problem here one must go behind the *Peterson* opinion. The penalty provided by the statute under which defendant was convicted provided:

"The punishment for misdemeanors hereunder and for offenses under the several provisions of this Act, where not otherwise specifically provided for, shall be a fine of not less than twenty-five dollars nor more than five hundred dollars, *or* [emphasis mine] imprisonment in the county jail not less than ten days nor more than six months, *or* [emphasis mine] by both such fine and imprisonment." S.L. 1909, p. 18, § 30.

The result of the case was that defendant only paid the fines. The trial court's judgment as far as suspension of the sentence was criticized as follows:

"If said sentences were suspended on certain conditions, and the law authorized the district court to suspend them, in case the defendant was charged with violating the conditions of suspension, common justice would require that he be given a hearing, which was not done in this case. *But that makes no difference in this case, as the court had no authority to suspend the sentence.*" (Emphasis mine.) 19 Idaho at 439, 113 P. at 731.

In other words, this court held that the suspended jail sentence imposed by the court below was all in vain. The statute authorized a fine or jail or both, but not a suspended jail term. Thus, when the de-

fendant walked out of the court after paying the fine he was absolutely free from further involvement with his sentence. This court said, as quoted, that even if conditions of suspension were prescribed and even if a hearing were held to determine if a condition were broken, it would be for naught since the statute did not authorize a suspended sentence in the first place.

The quotation above says there was no authority for the court to suspend the sentence. It appears from the opinion that the sentence was rendered on December 10, 1910. At that date the applicable statutory provision was Idaho Revised Code, Vol. II, § 7991, which read:

"If no sufficient cause is alleged or appears to the court why judgment should not be pronounced, it must thereupon be rendered."

This section reads the same as § 7991 of the Territorial Statutes of 1887.

An examination of Idaho's penal code applicable to the time of *Peterson* reveals no provision pertaining to suspension of sentences. Sections 6312 and 6313 provided general punishment standards for felonies and misdemeanors, no mention being made of suspensions. The only code provision pertinent was § 7980 which mentions motions for arrest of judgment or new trial:

"After a plea or verdict of guilty, or after a verdict against the defendant on a plea of a former conviction or acquittal, if the judgment be not arrested or a new trial granted, the court must appoint a time for pronouncing judgment, which, in cases of felony, must be at least two days after the verdict, if the court intend to remain in session so long; but if not, then at as remote a time as can reasonably be allowed." Idaho Revised Code, Vol. II (1908).

The opinion was thus correct when at 19 Idaho 438, 113 P. 730, it stated "[w]e know of no authority in our statutes for such judgments as the ones entered in said cases." And because there was no statuto-

ry authority this court must have reasoned the courts had no general inherent authority to suspend the sentence if the result of the case is to make sense.

In 1915, perhaps as a reaction to the *Peterson* decision, the legislature amended I.R.C. § 7991 to grant to the court limited powers to suspend sentences for defendants under the age of 25. This was the progenitor of the present I.C. Title 19, Ch. 26. The amendment is S.L.1915, Ch. 104, p. 244, the statement of purpose reading:

"To amend section 7991 of the Revised Codes of the State of Idaho *and to Grant to the District Court the Power to Suspend* or Withhold Judgment in Criminal Cases and to put a Person Convicted of a Criminal Offense on Probation in the Charge of a Probation or Other Proper Person" (Emphasis mine.)

Subsequent cases in Idaho support my view of the *Peterson* decision. In re Jennings, 46 Idaho 142, 267 P. 227 (1928), involved a sentence whereby a jail sentence was suspended and the defendant paroled to the county sheriff on the condition defendant pay a fine. The fine was not paid at the time promised (defendant signed a promissory note) and defendant was jailed.

The issue presented was whether the jail sentence could be lawfully carried out even though by the calendar the term of imprisonment specified in the judgment had expired. The court first ruled that as in the *Peterson* case, the suspension of sentence was without authority, was surplusage, and would be disregarded. However, the opinion cited State v. Ensign, 38 Idaho 539, 223 P. 230 (1924), which somewhat modified *Peterson*, as will be explained.

In *Peterson* the suspended jail term was disregarded; the trial court there in effect lost jurisdiction where the prisoner went free after sentence and there the suspended jail term phase was ineffective. But in *Jennings* the defendant was required by this court to serve the improperly granted suspended jail sentence. A similar result is found in the *Ensign* case.

What can be distilled, then, from these cases is that the terms of the judgment will be literally enforced despite an attempt to suspend part of that judgment. The rule is harsher than the result in *Peterson* where defendant avoided any jail time. The crucial point to note, of course, is that this court reaffirmed the idea that absent a specific statutory grant of authority the ·court could not suspend a criminal sentence.[1]

There is another decision from this court which I believe will sum up the cases closely on point. In re Grove, 43 Idaho 775, 254 P. 519 (1927), involved a youthful offender who in 1923 was adjudged guilty but pronouncement of sentence was with-held and the defendant released on his own recognizance. Over three years later he again ran afoul of the law, but instead of being tried was sentenced to prison to serve under the original judgment. Defendant Grove contended in his habeas corpus petition that the 1923 sentence constituted a withholding of judgment for an indefinite period, and that the trial court was without jurisdiction to impose the judgment three years hence. This court agreed with defendant, reasoning that the 1923 sentence did not comply with the parole statute which required the sentence to clearly specify duration and conditions.[2]

The opinion also voided the prison sentence by referring to the holdings of the *Peterson* and *Ensign* decisions, supra. I believe the words of Chief Justice Wm. E. Lee bear on this case:

"Since the decisions in the Peterson and Ensign cases relate to the suspension of a sentence already entered, they are not strictly in point on the precise question here presented, to wit, the power to indefinitely withhold the pronouncement of judgment on a plea of guilty. However, those decisions indirectly sustain the proposition that the courts possess no such power, for, like the power to indefinitely suspend the execution of judgment, the power to indefinitely withhold the pronouncement of judgment is nothing more or less than the power to perpetually prevent punishment, which the courts do not possess." 43 Idaho at 779, 254 P. at 520.

Two paragraphs later in the *Grove* opinion, Chief Justice Lee refers the reader to the case of Ex parte United States, supra, which of course supports the conclusion of the above quotation. It could not have escaped the court's attention that the Supreme Court relied on the *Peterson* decision, supra, to bolster its decision in Ex parte United States and the fact that it is cited as authority for the *Groves* decision convinces me my position here is correct.

I am convinced this present situation is basically the same as the *Jennings* case, supra. Here the legislature has manifested its intent to impose a firm sentence and to leave fewer alternatives to the sentencing magistrate. I.C. § 49–1102(d), (1970 Supp.), says "this sentence shall be mandatory on every judge of every court of the State of Idaho without any right to exer-

---

1. In S.L.1915 Ch. 104, p. 244, supra, the new suspension power initially applied only to defendants under 25 years of age and then only for certain crimes.

:2. 43 Idaho at 778, 254 P. at 519: "Subsequent to the decision of the Peterson case, the Legislature enacted what is generally referred to as the parole statute (C.S., secs. 9041 to 9047), providing, among other things, that on a conviction of certain offenses, of which grand larceny is one, ' * * * the court may in its discretion, * * * withhold judgment on such terms and for such

time as it may prescribe. * * *' A reference to that portion of the order set forth shows that the court did not, on January 30, 1923, prescribe any terms or any time for withholding judgment, but unconditionally released the defendant from custody and indefinitely withheld the pronouncement of judgment. The parole statute undoubtedly requires that the terms on which, and time for which, judgment is withheld be made a part of the order in writing. It is apparent that, in the foregoing order, the court made no attempt to comply with the parole statute."

cise judicial discretion in said matter." The discretion barred refers to I.C. § 19-2601, (1970 Supp.), which is the general grant of authority to the trial court with reference to sentencing criminal defendants.

The majority has not adequately, in my opinion, come to grips with the constitutional framework here in Idaho. I, of course adhere to the separation of powers concept which is present in Idaho's constitution. However, the courts, legislature and executive are creatures of the constitution and we must consult it first before blazing trail through any forest of primeval natural laws.

The principal constitutional provision that applies here is art. 4, § 7, which grants the pardoning power in this state to the executive department. My concept of the separation of powers doctrine as it applies here is that this state's constitution has specifically delegated to the executive part of the power to grant relief from the punishment for criminal acts otherwise prescribed by the legislature. See State v. Ensign, supra.

There are a number of state appellate decisions which have held statutes granting the courts the power to suspend the imposition of punishment to be unconstitutional as violative of the exclusive pardoning power possessed by the executive. Montgomery v. Alabama, 231 Ala. 1, 163 So. 365 (1935).

Such an interpretation of Idaho's constitution is too restrictive. Rather the executive and the legislature share the power to determine punishment for criminal behavior. The legislature has the duty to define crimes, In re Speer, 53 Idaho 293, 23 P.2d 239 (1933), as well as to prescribe appropriate punishment. This theory is in practice in this state as manifested by a statutory scheme granting wide latitude in most cases to the trial judge. See I.C. §§ 18-

107, 19-2511 (1970 Supp.), 19-2601 (1970 Supp.), 19-2604 (1970 Supp.), and 16-1814 (1969 Supp.). These views square with the view of a substantial number of other jurisdictions. See Annot. 101 A.L.R. 1402.

Today the courts have a full arsenal of tools to prevent the miscarriage of criminal justice. Aside from the ameliorative sentencing power already listed[3] courts have the power to grant a new trial (I.C. § 19-2406), arrest the judgment (I.C. § 19-2408), or arrest the judgment on the court's own motion (I.C. § 19-2409). Defendants may also seek relief in the appellate courts (I.C. § 19-2801 et seq.). These procedures were not known at early common law. Of course, as at common law, the governor and Commission for Pardons and Paroles can negate convictions which do not comport with notions of justice and fairness.

For the foregoing reasons, I would reverse the decision of the district court and hold the statute to be constitutional.

SHEPARD, J., concurs.

---

3. It appears the legislature anticipated that a 10 day jail sentence could be excessively harsh in some situations. A man could lose his job or a student miss a block of classes. Therefore, the judge may allow a person convicted under § 49-1102 to serve his jail time on weekends or days off.