By the Court. Duer, J.
The motion to dismiss this writ of error proceeds upon the single ground, that the writ ought not to be entertained by the appellate court, when it appears from the record that the judgment in the court below had been obtained by the default of the party seeking its reversal. In fewer words, that a writ of error does not lie upon a judgment by default. It is certain that, in our late court of errors, this doctrine was established by a series of decisions; (Gelston v. Hoyt, 13 J. R. 561; Henry v. Cuyler, 17 Johns. 471; Colden v. Knickerbocker, 2 Cow. 31; Campbell v. Stokes, 2 Wend. 137;) nor can it be denied that most of the reasons which were assigned in its support by Chancellor Kent, in the leading case of Gelston v. Hoyt, apply with equal force, whatever may be the powers and jurisdiction of the court in which the writ of error is brought. His main argument had no relation to the peculiar character of the court of errors, under the constitution of the state.
It is, however, insisted, on the part of the plaintiff in error, that this doctrine was in fact limited to the court of errors ; that it had never been considered to be applicable, nor in a single case has ever been applied to writs of error from inferior tribunals to the supreme court, and my examination of the subject compels me to say that these positions are fully sustained by authorities that I am bound to follow. I am satisfied that the appellate jurisdiction of the supreme court has never been subject to the limitation, which the court of errors, by a strict construction of its constitutional powers, chose to impose upon its own action.
*655 In England, the law is fully settled, and has never been doubted, that a writ of error lies upon any and every final judgment in a court of record. Nor is any intimation to be found in any elementary or text writer, nor I believe in any adjudged case, that there is any class of judgments which constitutes an exception from the general rule. (Co. Litt. 288 b; 9 Viner’s Ab. 474 a, pl. 6; Com. Dig. Pleader 3, B. 7; 2 Black. Com. 406; Stephens on Pl. 120; Commonwealth v. Judges of Common Pleas, 3 Binney 276.)
That judgments by default are not an exception, is proved by many express decisions, to some of which I shall briefly refer. Salkeld v. Ld. Howard, (Cro. Jac. 547,) was a writ of error to the king’s bench, upon a judgment in a real action, rendered by the default of the plaintiff in error, the defendant below, in the common pleas. He assigned as a special error, that he was not tenant of the premises in question when the original writ was issued. The judges were divided in opinion upon the question whether he was not precluded from relief by his neglect to plead “ non tenwre ” in the court below; but no question was raised as to his right to bring, and their duty to entertain the writ, and they all agreed, that if the plea of non temore could not have been properly interposed, the judgment might be reversed. That decision suggests a remark that hereafter may be found to have an important bearing upon the present case ; namely, that although the omission of the plaintiff in error to plead in the court below may not divest him of his right to bring the writ, yet it may preclude him from assigning any error in law or fact, not apparent upon the face of the record, of which he might have availed himself by plea to prevent the recovery of the judgment.
In Williams v. Gwyn, (2 Saund. 43,) error was brought by the heir, upon a judgment against, his ancestor, in a writ of dower unde niMl hahet. The judgment had been rendered upon a nil dieit, which, as it is equivalent to a confession of the plaintiff’s right, presents a stronger case than an ordinary default. The right of the heir to bring the writ was not denied, and the cause was therefore heard upon the errors assigned; but as these errors, in the opinion of the comb, so far from *656 being prejudicial to the defendant below, were in his favor, the judgment was affirmed.
The last and perhaps the strongest case that I shall cite, is Wade v. Rogers, (1 W. Black. 950.) This was a motion to quash a writ of error u¡oon a judgment by default; not, however, upon the ground that the writ would not lie, but that the plaintiff had in effect stipulated that it should not be brought. The court denied the motion, not being satisfied that this was the necessary construction of the agreement of the parties, and by this denial, by a necessary implication declared that it is only by an express stipulation that the right of a defendant to bring a writ of error upon a final judgment, whatever may be its form, or the pleadings or evidence upon which it was rendered, can be barred or restricted. And that such, in former times, was the general understanding of practitioners, not only in England, but in this state, is rendered evident by the fact, that even where the judgment was given by confession, it was usual to insert in the warrant of attorney, or cognovit, a release of errors, or a positive stipulation that no writ of error should be brought.
There are numerous cases in the books, in which application has been made to the court below to enforce such a stipulation, by quashing a writ of error issued in violation of its terms, and in every one of these cases the application would have been needless, and must have been denied, if, in the absence of the stipulation, it would have been the duty of the appellate court to dismiss the writ. ' (4 Moore & Scott, 333; 6 Bingham 387; S. C. 4 Moore & Payne, 21; 1 Term Rep. 388; 2 Ibid. 183; Graham’s Pr. 941.)
The English cases which have been cited were all in the court of king’s bench, and the fact is proper to be stated, since it will be seen that it gives to these cases a controlling and decisive authority, upon the question under consideration.
It is a remarkable fact, that the powers and jurisdiction of the supreme court, as formerly organized, were not defined in either of the constitutions of the state, or by any act of the legislature. The constitution of 1777 recognizes the court as then existing, and adopts it with the powers it then possessed, and the consti *657 tution of 1821, although it altered materially the constitution of the court, is equally silent as to its jurisdiction. It is a necessary consequence, that the extent and limits of its jurisdiction can only be ascertained by referring to the object and terms of its original creation; and hence the revised statutes have truly declared, that it possessed the powers, and exercised the jurisdiction which belonged to the supreme court of the colony, subject only to such exceptions, limitations, and additions, as are created and imposed by the constitution and laws of the state; (2 R. S. 196, § 1;) for this provision, although an enactment in its form, is in truth only declaratory of the meaning and effect of the silence of the constitution.
The supreme court of the colony was first permanently organ7 ized by an act of the colonial legislature in 1697; and from that time, during the whole residue of our existence as a colony, and within the bounds of the colony, it possessed the powers and exercised the jurisdiction, civil and criminal, appellate as well as original, of the court of king’s bench in the mother country. (1 Smith’s History of Hew York, Appendix 6.)
In relation to writs of error, no portion of the jurisdiction had been taken away or abridged by the constitution, or by any law of the state. And as it "was virtually given by the constitution, it is obvious that the exercise of no portion of it could be renounced by the judges themselves. They had not the power to dismiss any writ of error which the sujjreme court of the colony, our colonial king’s bench, must have entertained, for in so doing they would have violated a plain duty which the constitution, if not in terms, yet in reality imposed. As the constitution gave the jurisdiction, they could not decline its exercise.
We are now acting as the supreme court in the exercise of its former rightful jurisdiction, and it would have been a subject of regret, had we found that there were any prior decisions of the court, in conflict with the views that have been stated, as those it was bound to follow. But in truth no such cases are to be found. So far as I have been able to discover, the practice of the court, and its actual decisions, have at all times been in harmony with its powers and its duty, as I have attempted to explain them.
*658 In the case of Burr v. Waterman (2 Cow. 38, note,) a judgment by default, in the common pleas of this city, was reversed by the supreme court, for errors disclosed in the proceedings, brought up by a certiorari; and in Hart v. Seixas, (21 Wend. 40,) a similar judgment was affirmed. In neither of these cases, it is true, was any question raised as to the jurisdiction of the court; and perhaps, for this reason, their authority may be doubted, since it was upon this ground that the court of errors, in Henry v. Cuyler, refused to follow its own prior decision in Cheetham v. Tillotson, (5 John. R. 430.) But this exception cannot be taken to the cases next to be cited. In Campbell v. Stokes, (2 Wend. 145,) Chancellor Walworth stated very clearly the distinction between the jurisdiction of the court of errors and the appellate jurisdiction of the supreme court; and while he insisted that the former court could only re-examine and correct erroneous decisions actually made by other tribunals, upon questions actually presented to- them for their determination, he admitted that the supreme court was bound to correct all errors in the proceedings of inferior tribunals that were brought before it, whether the decisions had been actually or only nominally made in the court below. It is true that these remarks, so far as they relate to the supreme court, were only the expression of an opinion, but it was the opinion of a judge, whose dicta upon such a subject have nearly the force of authority.
In the case, however, of Pilee da Gandall, (9 Wend. 147, 153,) we reach at last an express decision; for the defendant was greatly mistaken in supposing that the observations of Chief Justice Savage in this case were in. any degree extrajudicial ; so far from being extraneous to the case, they were necessary to its decision. It was an action of replevin, in which the defendant put in five several cognizances, to every one of which the plaintiff in error had failed to answer, and in consequence, judgment of non pros, had been entered against him. It was objected by the defendant in error, that judgment in the court below having been tajeen by default, and no question having been actually decided by that court, a writ of error would not lie; and in reply to this objection, the chief justice, in delivering the judgment of the court, said, “ that the decisions *659 In the court of errors had been mainly founded upon the constitution, and that the doctrine which those decisions established had never been applied, and was not applicable to writs of error removing proceedings from inferior courts into the supreme court.” And for errors in substance apparent upon the record, the judgment was reversed. We should have been justified in reposing ourselves upon the authority of this decision, without any observations of our own, but it was deemed expedient by a full examination of the subject, to remove the doubts, which we had' reason to know, still remained in the minds of the profession. It is certain that the decisions in the court of errors had created a very general impression, that in no case can error be assigned in any court upon a judgment by default, and from this impression our own minds were not exempt.
Whether, under the provisions of the new code of procedure, an appeal will lie from a judgment by default, is a question by no means free from difficulty, but which I decline to examine, since I am satisfied that these provisions have no application to the present case; whatever other changes the code may have effected, it has not transmuted pending writs of error into appeals. Its provisions upon the subject are wholly prospective.
Whether the proceedings in the court below, that have been brought before us by certiorari, furnish any valid cause for a reversal of the judgment, is a question which, although argued by the counsel, I must refuse to decide. A certiorari is a writ of right, and a plaintiff in error is entitled by this process to bring before the appellate court any of the proceedings in the inferior court that he may deem material, and the question of their relevancy or irrelevancy as affecting the merits of the judgment, or the jurisdiction of the court in which it was rendered, must be raised upon the hearing of the errors assigned, and cannot be summarily disposed of upon motion. Such was the decision of the supreme court in Pelletreau v. Jackson, (9 Wend. 473,) which we hold ourselves bound to follow.
Although this motion, by the consent of the parties, was heard by me at chambers, it was made, and is proper to be decided at a general term. This opinion has accordingly been submitted *660 to, and is approved by my brethren; and the decision is to be regarded as that of the court.
The motion to dismiss the writ of error is denied, but without costs ; the propriety of bringing the question before us in this form, having been suggested by the court.