(19 Misc. Rep. 553.)

### PEOPLE v. VALENTINE et al.

(Supreme Court, Special Term, New York County. February, 1897.)

CRIMINAL LAW—CERTIFICATE OF REASONABLE DOUBT—EVIDENCE.

Reasonable doubt, such as to justify the granting of a certificate therefor, is raised, where, in a trial under an indictment containing three counts, one of which was for larceny, evidence of false representations in this and in other transactions was admitted over the objection of defendant, and after the dismissal of all but the count for larceny the court refused to charge that such evidence was not to be considered.

Walter D. Valentine and William S. Fender were convicted of larceny, and make their application for a certificate of reasonable doubt. Granted.

Howe & Hummel (Benjamin Steinhardt, of counsel), for application.

Wm. M. K. Olcott (John D. Lindsay, of counsel), opposed.

TRUAX, J. The whole record which is now before me presents a different state of facts from that presented by the incomplete record. On an application for a stay of proceedings in a criminal case, it is not necessary that the judge to whom the application is made should be satisfied that the judgment will be reversed. It is enough that he is satisfied that a question of law is raised sufficient for the consideration of the appellate tribunal. On such application it is not required that the judge to whom the application is made should determine whether the error complained of warrants the granting of a new trial; for the granting or refusing of a new trial is vested in the appellate court, which may "order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether an exception shall have been taken or not, in the court below." Code Cr. Proc. § 527. Neither is it necessary for the applicant to show that the error alleged to have been committed did in fact prejudice the defendant; but, on the contrary, the judge to whom the application for a stay is made must be satisfied that the error could not in any way have affected or prejudiced the defendant, before he is warranted in denying an application for a certificate of reasonable doubt. In Foster v. People, 50 N. Y. 610, the court of appeals, although it affirmed the judgment of the court below, said that the case was a proper one to have been brought before it for final adjudication. It was said by a justice of the supreme court in People v. Hartung, 17 How. Prac. 151, that, where a judge has grave doubt of the correctness of the rulings of the trial judge, it is his duty, in the exercise of the judicial discretion with which he is clothed, to stay the execution of the judgment. And to the same effect is People v. Hendrickson, 1 Park. Cr. R. 396, where it was held that in determining whether a writ of error should be allowed, and a stay of proceedings granted, * * * it is not necessary that the justice to whom the application is made should arrive at the positive conclusion that the trial judge erred; it is enough that the exception involves a gravely important question, in regard to which there is a conflict of authority, and which remains unsettled by the courts of this state. I am of the opinion that the admission of evidence of the certificates of incorporation of the Virginia companies, to which admission the defendants duly objected and excepted, presents a question which should be determined by the appellate tribunal. The court of appeals said in the case of People v. Webster, 139 N. Y. 79, 34 N. E. 730, "that, if errors were committed in the reception of evidence, * * * they must be reviewed and considered, for the court was unable to say that if they existed they did not prejudice the defendant, or affect the verdict of the jury." See, also, Coleman v. People, 58 N. Y. 561, 562. The admission of these certificates must have influenced, to a considerable extent, the minds of the jury. The court said that it admitted the certificates of incorporation, "it appearing that each of the certificates related to matters already in evidence, and it appearing that two of the defendants on trial were two of the

incorporators, and for the purpose, as the district attorney claims, of showing the connection between these defendants and the stock corporation in question, and relating to the circulation of the stock, relating to the issue and the circulation of the stock, and its being dealt in"; and when it came to charge the jury the learned recorder laid particular stress upon this evidence. He charged that:

"The district attorney further claims that the stock so indicated by the names, Old Dominion Lumber Company, the Halifax Improvement Company, the Virginia Tobacco Company, the Southern Live Stock Company, and, I think, one other, did not represent genuine stock in any genuine company; that they were not marketable in the stock market; that they were not bought and sold in and upon an exchange; that the figures representing the market value of these stocks at certain times were fictitious, and did not represent what they purported to represent; that in fact these stocks were not bought and sold in the public market or on the exchange; * * * that this system was a plan or scheme on the part of the defendants, which they made use of as a means of obtaining, from the possession of persons who went to buy these stocks, moneys for the specific purpose of buying stock, while, as a matter of fact, there were no stocks bought or sold, and, as matter of fact, these stocks so represented were not on the market for purchase or sale; and that, as matter of fact, when the person went in there to buy these stocks, and gave the defendants the money for that specific purpose, no stocks were bought, and the money so paid was appropriated to their own use."

It is to be borne in mind that the defendants were indicted and convicted for stealing, with force and arms, the sum of $3, on the 14th day of December, 1895, the property of one Alfred Herckmans. It is true that there were two other counts in the indictment, but these two counts were dismissed, and both the people and the defendants went to the jury on the count above stated. I cannot see that the certificates above referred to proved, or tended to prove, that the defendants stole from the complainant the sum of money above mentioned. Certainly the certificates of the corporations other than the Old Dominion Lumber Company had no bearing on the question, and yet the jury was in effect told by the learned recorder that this evidence did have some bearing upon the question of the defendant's guilt. The people were allowed to prove by one David Finkelstein what were called similar transactions prior to the 14th day of December, 1895. To this, defendants duly objected and excepted, and at the close of the case, after the trial court had dismissed all but the common-law count for larceny, the defendants requested the court to charge that for the purpose of this case the general business carried on by the defendants was not to be considered by the jury as illegitimate, but, on the contrary, as legitimate, and also to charge the jury not to give any consideration whatever to the testimony referring to false representations, as set out in the first count of the indictment. The court declined to charge each of these requests, and the defendants duly excepted. Now, if the certificates and the evidence of Finkelstein, above referred to, were admissible at all, they were admissible under the first and second counts, and not under the count charging the defendant with common-law larceny. But, as I have stated, all but this last count were dismissed, and for that reason I am of the opinion that the refusal to charge as requested was

.error.   At any rate, a question of reasonable doubt is raised in my
.mind, and this question should be settled by the appellate division.
·It is also doubtful whether the evidence warrants a conviction on
.the common-law count for larceny.  Motion for a certificate granted.
    Motion granted.