### PEOPLE v. GOODRICH.

(Supreme Court, Onondaga County, At Chambers. 1914.)

1. CRIMINAL LAW (§ 1001*)—SENTENCE—POWER TO SUSPEND EXECUTION.

The Supreme Court, after passing sentence of imprisonment at Trial Term, has the inherent power at common law to suspend sentence during defendant's good behavior, and to revoke such suspension at a later term and direct that it be executed, and has the same power under Penal Law (Consol. Laws, c. 40) § 2188, providing that courts in their discretion may suspend sentence during good behavior in certain cases, in view of Code Cr. Proc. § 487, as amended by Laws 1901, c. 372, providing that in certain cases, where the court has suspended sentence or the execution thereof, the defendant shall be placed in the hands of a probation officer, and of Code Cr. Proc. § 483, as amended by Laws 1905, c. 656, providing that after a plea or verdict of guilty the court, on suspending sentence, may place defendant on probation or suspend sentence of imprisonment, and as further amended to allow the court to revoke such provision and pronounce judgment or revoke such suspension of judgment. The suspension of execution gives the prisoner no vested rights, nor does it in any way conflict with the pardoning power of the executive.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2554–2559; Dec. Dig. § 1001.*]

2. COURTS (§ 148*)—NEW YORK SUPREME COURT—POWERS.

The Supreme Court succeeded to all the powers possessed by the old Court of King's Bench, and under Const. art. 6, § 6, to all powers of the old Court of Oyer and Terminer, possessed either at common law or by statute, such as Laws 1823, c. 182, § 9, making the Court of Oyer and Terminer a continuous court, even though held by different judges and its successive sessions merely terms of the same court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 375, 377, 380, 381, 398; Dec. Dig. § 148.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CRIMINAL LAW (§ 304*)—JUDICIAL NOTICE—CONSTRUCTION OF STATE LAW.
     The Supreme Court may take judicial notice of the fact that Penal
   Law (Consol. Laws, c. 40) § 2188, providing that courts in their discretion
   may suspend sentence during good behavior, has been uniformly con-
   strued, as a matter of common knowledge to the bench and bar, as ap-
   plying to the suspension of execution, as well as of the passing of sen-
   tence.
     [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 700–717,
   2951½; Dec. Dig. § 304.*]

4. STATUTES (§ 219*)—CONSTRUCTION—PRACTICAL INTERPRETATION BY PUB-
   LIC OFFICERS.
     Upon an application for a certificate of reasonable doubt, pending an
   appeal from an order of Trial Term revoking a former order, so far as
   it directed a suspension of imprisonment, and directing such sentence to
   be executed, involving great public interest, the fact that Penal Law
   (Consol. Laws, c. 40) § 2188, providing that courts in their discretion may
   suspend sentence during good behavior, has been uniformly construed by
   public officers as applying to the suspension of execution, as well as the
   suspension of the passing of sentence, should be given controlling effect.
     [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec.
   Dig. § 219.*]

5. COURTS (§ 89*)—RULES OF DECISION—PRACTICE.
     The value of precedents, especially in matters of practice, depends so
   much upon the identity of statutes, the similarity of the courts, and the
   methods of procedure, that without proof thereof little weight can be ac-
   corded to them.
     [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec.
   Dig. § 89.*]

6. CRIMINAL LAW (§ 1073*)—SENTENCE—CERTIFICATE OF REASONABLE DOUBT
   —ISSUES.
     Upon application for a certificate of reasonable doubt, pending an ap-
   peal from an order of Trial Term revoking its former order, so far as
   it directed a suspension of imprisonment during good behavior, and di-
   recting that such sentence be executed, the court need not try the issue
   of fact whether defendant violated the condition of good behavior.
     [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec.
   Dig. § 1073.*]

7. CRIMINAL LAW (§ 1073*)—SENTENCE—RIGHT TO CERTIFICATE OF REASONA-
   BLE DOUBT.
     Upon application for a certificate of reasonable doubt, pending an ap-
   peal from an order of Trial Term revoking a former order, after plea of
   guilty, so far as it directed a suspension of imprisonment, and directing
   the sentence to be executed, where defendant's right of appeal did not
   depend on the granting of such certificate, so that the only effect of a
   certificate would be to stay the execution of judgment pending the ap-
   peal, the certificate would be denied, as being an unwarrantable inter-
   ference with the due course of justice.
     [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec.
   Dig. § 1073.*]

Carrie Goodrich was convicted of keeping a disorderly house, and
she applies for a certificate of reasonable doubt pending an appeal.
Application denied.

Ray B. Smith, of Syracuse, for defendant.
Geo. H. Bond, Dist. Atty., of Syracuse, for the People.

EMERSON, J.  The defendant was indicted by the grand jury of
Onondaga county on March 14, 1913, for the crime of keeping a dis-

orderly house. She was arraigned before the court on March 27th, and interposed a plea of guilty to the indictment, and was thereupon sentenced to pay a fine of $200 and to be imprisoned in the Onondaga County Penitentiary until paid, not to exceed one day for each $1 of fine unpaid. She was also sentenced to be imprisoned for one year in said penitentiary in addition to such fine, which imprisonment was suspended during her good behavior; the order stating that good behavior would be construed to mean that she should not again engage in the business of keeping a disorderly house. The defendant thereupon paid the fine imposed and was released from custody.

At the .May Trial Term of the Supreme Court, held by the same justice who presided at the March term, the defendant was again indicted by the grand jury for a subsequent offense of keeping a disorderly house, and she was thereupon apprehended and brought before the court, who, after examining the last indictment thus found and reading the evidence produced. before the grand jury on which said indictment was presented, made an order revoking the order of March 27, 1913, so far as it directed a suspension of the imprisonment so imposed, and directed that said sentence of imprisonment should be executed.

The defendant now asks a certificate of reasonable doubt under section 527 of the Code of Criminal Procedure, to the end that the execution of said judgment may be stayed pending an appeal. In disposing of the question thus presented I shall assume that an appeal is the proper remedy for defendant and that the validity of the latter order may be determined upon such appeal. There are respectable authorities to the effect that the remedy of the defendant is by appeal, and not by habeas corpus, and for the purpose of this hearing I shall hold that to be the law. People v. Kelly, 32 Hun, 536; People v. Schleth, 68 Misc. Rep. 307, 123 N. Y. Supp. 686.

[1-4] The question thus presented is whether the trial court had power at the March term, after passing sentence of imprisonment, to direct a suspension of the same; for, if it had such power, then it clearly possessed a like power to revoke such suspension at a future term. In my opinion the court possessed such power, both at common law and under the statutes. The inherent power of the Supreme Court over its own decrees, both in pronouncing judgment and in suspending the execution of the same, would seem to follow from its constitution and the very nature of its jurisdiction. Indeed, such power has rarely been questioned. It is quite true that the late Justice Balcom once held at Special Term in the Morrisette Case, 20 How. Prac. 118, that the court did not possess the power to indefinitely suspend sentence, on the ground that it was in effect the exercise of a pardoning power, which by the Constitution was vested in the executive alone; but this doctrine never received the sanction of the higher courts. It was denied in the Harrington Case, 3 N. Y. Cr. R. 139, and also in our own General Term in the Graves Case, 31 Hun, 382. The matter was settled beyond all question by the Court of Appeals in the case of People v. Court of Sessions, 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856, where it was held that the court pos-

sessed inherent power to suspend sentence after conviction. The court in this case clearly points out how the suspension of judgment in a criminal case in no manner conflicts with the pardoning power granted to the executive.

But it is urged that the above cases all related to the postponement of sentence, while the case at bar was a postponement of the execution of a sentence after it had been passed. It is difficult to see any distinction between the two cases. If the court possesses inherent power to postpone the passing of sentence, why should it not. possess a like power to postpone execution of a sentence after it has been pronounced? As is said in People v. Fabian, 126 App. Div. 97, 111 N. Y. Supp. 140, the suspension of sentence in no way disturbs the finding, but merely postpones the imposition of punishment. Why may not the same result be accomplished by postponing execution?

This power of postponing the infliction of punishment, both before and after sentence, seems to have been .exercised in England from the earliest times. In the reign of Queen Elizabeth the question was submitted to the Queen's Bench whether the justices of assize could, after the session had adjourned, lawfully command the sheriff to respite the execution still longer, and by the opinion of all the justices the order for further respite was adjudged good enough, and they said that the custom of the realm had always been to that effect. 2 Dyer, 205.

Blackstone says:

"The only other remaining ways of avoiding the execution of the judgment are by a reprieve or pardon, whereof the former is temporary only and the latter permanent. A reprieve is the withdrawing of a sentence for a period of time, whereby the execution is suspended. This may be ex arbitrio judicis, either before or after judgment, as when the judge is not satisfied with the verdict, or the evidence is suspicious, etc., or any favorable circumstances appear in the criminal's character, in order to give room to apply to the crown for either an absolute or conditional pardon. These arbitrary reprieves may be granted or taken off by the justices of jail delivery, although the session is finished and the commission expired. But this is rather by common usage than by strict right." 4 Bl. Com. 394.

Lord Hale says in his Pleas of the Crown:

"Although the judge by whom judgment is given ought to be very cautious in granting a reprieve of one condemned for treason, yet he may upon due circumstances do it as well in case of treason as felony. And this reprieve he may grant, and after he hath granted it may command execution after the session and adjournment of the commission." 1 Hale's P. C. 368.

So, also, it is said in 2 Hawkins' P. C. c. 51, § 8, that the power of staying the execution of a sentence is inherent in all courts which are .invested with authority to award execution, and that the judge continues to have this power after their commission is determined. See, also, to same effect, 1 Chitty Cr. Law, 758.

It is quite true that the authorities cited all speak of crimes which were punishable with death; but this, I think, can largely be accounted for by the fact that at the time Blackstone wrote a large majority of the ordinary crimes were punishable capitally. There were over 160 offenses, some of them of a minor type, such as simple larceny,

which were at that time punishable with death and without the benefit of clergy. The constitution of the court and the derivation of its power was the same in misdemeanors as in felonies, and it must necessarily have been possessed of the same authority in both classes of cases. Indeed, upon principle, if a court possesses power to suspend the execution of a sentence to enable the offender to apply for a pardon, why should it not possess a like power, where used for purposes of reformation. But, be this as it may, it is manifest from the above authorities· that there was no distinction made by the English courts between a postponement of passing sentence and a stay of execution upon a sentence already passed.

Our Supreme Court succeeds to all the powers which were possessed by the old Court of King's Bench, and is therefore invested with all the rights and prerogatives that were exercised by that court. Kanouse v. Martin, 3 Sandf. 653, 657. And as the question was settled by the Court of Appeals in People v. Court of Sessions, above cited, that our courts possessed an inherent power to suspend the passing of a sentence, which power was derived from the custom of the realm, it follows for a like reason that they possess the power to suspend the execution of a sentence already passed.

The only question which seems to have been raised in England in regard to this power related to the exercise of the same after the adjournment of the term at which sentence was pronounced, and by a court composed of other judges than the ones pronouncing sentence, under which circumstances Blackstone says the power is rather by common usage than strict right. No such question can arise under our laws, as the constitution of our criminal courts is entirely different from those in the mother country. In England, at least at the time referred to in the authorities cited, the Court of Oyer·and Terminer was held by special commission; and when the commission expired the court ceased to exist; whereas in our state the Constitution of 1821 provided for· the organization of such courts, which by act of 1823 (Laws 1823, c. 182, p. 211, § 9) were authorized to sit without any other commission. . The effect was to make the Court of Oyer and Terminer under our laws a continuous court, even though held by different judges. Its successive sessions were merely terms of the same, and not distinct tribunals, as held in England. Appo v. People, 20 N. Y. 531; People v. Naughton, 7 Abb. Prac. (N. S.) 422, 423; Anonymous v. Anonymous, 10 How. Prac. 353; Matter of Seventh Ave., 29 How. Prac. 180; Tracy v. Talmadge, 1 Abb. Prac. 460. Under the Constitution the Supreme Court now succeeds to all the powers of the old Court of Oyer and Terminer, and hence is invested with all the' authority which that court possessed both by statute and common law. Const. art.· 6, § 6.

Coming, now, to the provisions of our statute law upon this subject, we find there was no enactment until the year 1893, when the Legis·· lature by chapter 279 of the Laws of that year, amended section 12 of the Penal Code by providing that courts might in their discretion suspend sentence during good behavior in certain cases. This provision is now incorporated into section 2188 of the Penal Law, and,

as said by the Court of Appeals in the case of People v. Court of Sessions, above cited, is merely declaratory of the common-law power possessed by the courts. It will be observed that this statutory provision does not in terms speak of the suspension of execution after sentence has been passed, neither does it speak of the suspension of passing sentence, but the language is merely "suspension of sentence." It seems to me this language is as well satisfied by construing it as applicable to the suspension of the execution of a sentence as to the passing of the same. It is a matter of common knowledge to the bench and bar, and a fact, therefore, of which the court may take judicial notice, that the clause in question has uniformly received that construction, and that ever since the enactment of the same our courts have without question applied it to the suspension of execution, as well as the suspension of the passing of sentence. This, I think, constituted such a practical construction of the statute as in matters involving great public interest like the present should be given controlling effect.

It was said by the chancellor in the case of Meriam v. Harsen, 2 Barb. Ch. 270, that custom and usage are to be considered in construing statutes, and when long continued and hitherto unquestioned have great force. Again, in the case of People v. Quigg, 59 N. Y. at pages 86 and 87, Allen, J., says, where a statute has received a practical interpretation for many years, it should not be departed from to give it a more restricted interpretation, where such action would seriously affect the administration of the criminal law, even if there might have been reason for some doubt at first as to the meaning and intent of the Legislature.

It is a well-recognized rule of statutory construction that a long-continued course of action by public officers under a statute is entitled to great weight in its construction and should not lightly be departed from. McKeen v. Delancy, 5 Cranch, 22, 3 L. Ed. 25; Power v. Village of Athens, 26 Hun, 282, 287; Fort v. Burch, 6 Barb. 60, 73; Matter of Wash. St. Asylum & Park R. R., 115 N. Y. 442, 447, 22 N. E. 356. General usage, long continued and unquestioned among public officers, in matters pertaining to the discharge of their duties, is of great force, and the practical construction thus given has much of the weight of a judicial decision. Easton v. Pickersgill, 55 N. Y. 310; People v. Dayton, 55 N. Y. 367, 378.

An examination of concurrent legislative enactments must also lead to the same conclusion. It will be observed that the only direct statutory authority to suspend sentence is contained in section 2188 of the Penal Law now under consideration. Yet the Legislature by chapter 372, Laws 1901, amended section 487 of the Code of Criminal Procedure, by providing that in certain cases where the court has suspended sentence, or after imposing sentence has suspended the execution thereof, the defendant should be placed in the hands of a probation officer. Also section 483 of the Code of Criminal Procedure, as amended by Laws 1905, c. 656, provides that after a plea or verdict of guilty the court, upon suspending sentence, may place defendant on probation, and if the judgment is to pay a fine the court,

on imposing sentence, may direct that the execution of the sentence of imprisonment be suspended and the defendant be placed on probation, and may also, as one of the conditions of suspension of sentence or of probation, require him to make restitution or to support his children. Said section was further amended by providing that the court could at any time in its discretion revoke and terminate such probation, and upon doing so, if sentence had been suspended, pronounce judgment, or, if judgment had been pronounced and execution suspended, the court may revoke such suspension, and the judgment shall be in full force and effect for its unexpired term.

While it is not contended that the defendant's case was disposed of under the above sections, they are important as legislative declarations that the court has power under the statutes to suspend the execution of a sentence, as well as to suspend the passing of the same.

[5] The learned counsel for the defendant has with great diligence collated a large number of decisions in sister states, the majority of which it is claimed deny the existence of the power which was exercised in this case. Some of these cases I have examined, and others, with my library facilities, are not at my command. It may, however, be said that the value of precedents, especially in matters of practice, depend so much upon the identity of statutes, the similarity of courts, and the methods of procedure that without proof of the same little weight can be accorded to them.

[6] It is also urged by defendant's counsel that the court erred in not trying as an issue of fact the question whether defendant had violated the conditions of her discharge. This is just what the Court of Appeals says the Legislature cannot require. In the Forsythe Case, above cited (People v. Court of Sessions, 141 N. Y. 288, at page 296, 36 N. E. 386, 23 L. R. A. 856), it is said that the Legislature cannot authorize the courts to abdicate their powers or duties, or to tie their hands in such a way that after sentence is suspended they cannot, whenever deemed proper, inflict the proper punishment in the exercise of a sound discretion. Nor can the free and untrammeled exercise of this power, or the right to pass sentence according to the discretion of the court, be made dependent upon compliance with some conditions that would require a court to try a question of fact before it could render the judgment which the law prescribes. I think the suspension of judgment in this case was a matter of grace, not of right, to the defendant, that she thereby acquired no vested rights, and the court had the right in its discretion to cancel and revoke the same. In any event, all that was required was to call to its attention facts that satisfied the conscience of the court that the defendant had violated the terms of her parole.

[7] The defendant's counsel finally urges that the question involved has never been directly passed on by the courts of this state, and therefore a certificate of reasonable doubt should be given. There are respectable authorities to the effect that where an important proposition is involved, that has not been passed on by the courts, a certificate of reasonable doubt should issue. People v. Stephenson, 11 Misc. Rep. 141, 32 N. Y. Supp. 1112; People v. Valentine, 19 Misc.

Rep. 555, 44 N. Y. Supp. 903; People v. Hummel, 49 Misc. Rep. 136, 98 N. Y. Supp. 713; People v. Meadows, 62 Misc. Rep. 573, 115 N. Y. Supp. 656. If the right of the defendant in this case to appeal depended on the granting of such a certificate as in cases of appeals from Special Sessions, or if the question sought to be reviewed related to the guilt or innocence of the defendant, the rule laid down by the above authorities would doubtless be deemed controlling. But here the defendant acknowledges and confesses her guilt, and she has not yet paid the penalty for the same. What was done by the court was an act of clemency on her behalf, and, as said by Justice Hardin in the Graves Case, 31 Hun, 383, it does not now lie in her mouth to say that she deserved and ought to have received sentence earlier, as she did not demand it and no injury to her by the delay is shown, or is inferable from the papers before the court.

The only effect of the certificate asked would be to stay the execution of the judgment pending the appeal, and as I entertain no doubt of the power of the court to do what was done, and as the defendant's plea of guilty yet remains unpunished, it seems to me that it would be an unwarrantable interference with the due course of justice to stay the enforcement of the penalty which the defendant upon her own confession deserves to have inflicted upon her.

The application for a certificate of reasonable doubt is denied.