THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOSEPH NISONOFF and MAX WEINSTEIN, Defendants.

Supreme Court, Special Term, Bronx County, May 19, 1943.

*Samuel J. Foley, District Attorney (George Tilzer* of counsel), for plaintiff.

*James D. C. Murray* for Joseph Nisonoff, defendant.

*Hyman Roffe* for Max Weinstein, defendant.

VALENTE, J. The convicted defendants have applied for a certificate of reasonable doubt and for admission to bail pending an appeal. A jury in the Bronx County Court found them guilty of manslaughter in the first degree. The trial proceeded upon an indictment under subdivision 2 of section 1050 of the Penal Law, which provides that a person who, with intent to procure the miscarriage of a woman by the use of certain means specifically referred to, unless the same is necessary to preserve her life, is guilty of manslaughter if the woman dies. The People charged that as a sequel to a criminal operation performed by these defendants upon one Madylon McGeehan, the said Madylon McGeehan succumbed. With this brief statement of the facts the charge itself requires no further elaboration.

We come now to a consideration of the application, which presents but a single specification. That concerns itself with the receipt in evidence of an autopsy report and opinion evidence given with respect thereto. On November 18, 1942, at the Fordham Morgue, one Dr. Louis F. Lefkowitz, Assistant Medical Examiner of Bronx County, performed an autopsy on the body of the deceased. During the course of the autopsy he dictated his findings to a stenographer employed in the Medical Examiner's office. When the autopsy was completed the stenographer transcribed his notes and prepared a report, which Dr. Lefkowitz had so dictated, and which report the doctor signed and it was then filed in the Medical Examiner's office. Before the trial of the defendants Dr. Lefkowitz died. The People called the stenographer as a witness, who testified to his presence at the autopsy, the accuracy of the transcription of the findings that were dictated to him, the preparation of the autopsy report and the signing and filing thereof. The report was received in evidence, over objection and exception of defendants' counsel. The prosecution then called as a witness Dr. Gonzales, Chief Medical Examiner, who, although not present at the autopsy, was, despite the objection of defendants' counsel, permitted to express his opinion as to the cause of death based upon the report. It may be remarked in passing that the District Attorney offered only the findings of the Assistant Medical Examiner and not that portion of the document containing his opinion as to the cause of death.

Whether the admission of the findings of the deceased examiner and the testimony of Dr. Gonzales violated the defendants' rights is a moot question. The District Attorney frankly observes that there is no case in New York precisely in point, arguing, however, that the autopsy findings were properly

received as a record made by a public officer in the course of his official duty and therefore is an exception to the hearsay rule. Section 878-3.0 of the Administrative Code of the City of New York (L. 1937, ch. 929) provides: " *Autopsies; findings.* If the cause of such death shall be established beyond a reasonable doubt, the medical examiner in charge shall so report to his office. If, however, in the opinion of such medical examiner an autopsy is necessary, the same shall be performed by a medical examiner. A detailed description of the findings written during the progress of such autopsy and the conclusions drawn therefrom shall thereupon be filed in his office." Section 879 of the New York City Charter (1938), relating to the duties of the Medical Examiner, is as follows: " It shall be the duty of the chief medical examiner to keep full and complete records in such form as may be provided by law. The chief medical examiner shall promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner in charge, any indication of criminality, and such records shall not be open to public inspection." The District Attorney contends that notwithstanding an autopsy record is not open to public inspection, nevertheless, being a record made by a public officer pursuant to statute, it therefore is competent. The defendants, on the other hand, claim that the report of a medical examiner is not a public record within the rule permitting the introduction in evidence of records of a public officer, and that the receipt in evidence of this document deprived them of their right to confrontation by the witness against them. The right of confrontation is now guaranteed by the State Constitution (art. I, § 6).

The general rule with respect to the competency of public records, as an exception to the hearsay rule, is simpler in its declaration than in its application. Stated broadly the rule is to the effect that the right of an accused in a criminal proceeding to confront the witnesses who testify against him is not violated by the introduction of public documents. (*Heike* v. *United States,* 227 U. S. 131, affg. 192 F. 83; *Commonwealth* v. *Slavski,* 245 Mass. 405.) One of the questions here is whether the report can be classified as a public record when it is not open to public inspection but is in the nature of a confidential report to the District Attorney. In support of a liberal interpretation of the rule it has been observed that " A technical adherence

to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused and farther than the safety of the public will warrant." (*Heike* v. *United States,* 192 F. 83, 94, *supra,* quoting *Mattox* v. *United States,* 156 U. S. 237, 243.) It does not necessarily follow that agreement with that view implies a belief that, in cases where the People are required as part of their case to establish the death of a person by a criminal agency, the rule should be extended to permit such proof by document. To sanction such practice might well be carrying the doctrine to the point where all essentials might be proved by records and the right to be confronted by adverse witnesses and subject them to cross-examination be rendered meaningless. While the courts have at times not looked with favor upon technical adherences to the letter of a constitutional provision, it can hardly be said that the insistence of an accused to be confronted by a witness to establish a vital part of the People's case, i. e., the " *corpus delicti* ", could be regarded as either an attempt to be technical or as indulging in legal refinement. Our Civil Practice Act contains numerous sections (§§ 366–379) allowing the use of documents of various types as substitutes for oral testimony. This is carried over to section 392 of the Code of Criminal Procedure, which provides that the rules of evidence in civil cases are applicable to criminal cases, except as otherwise therein provided. Subdivision 3 of section 8 of the Code of Criminal Procedure, referring to the rights of a defendant in a criminal action, provides that the defendant is entitled " To produce witnesses in his behalf, and to be confronted with the witnesses against him in the presence of the court, except * * * " [in instances here not relevant]. The right to be confronted with the adverse witnesses in court is plainly a case which comes within the express exception of section 392. (*People* v. *Bromwich,* 200 N. Y. 385; *People* v. *Hines,* 284 N. Y. 93, 115; *People* v. *Sugarman,* 248 N. Y. 255.) While the Civil Practice Act authorizes the introduction of written records and reports in a variety of instances in civil cases, and recent decisions (*Meiselman* v. *Crown Heights Hospital,* 285 N. Y. 389) indicate that there is a tendency on the part of the courts to construe those sections liberally, I am not at all certain that the same latitude should be extended to criminal cases, where there is preserved for the defendant the right of confrontation.

The District Attorney relies upon the language in the opinion in *People* v. *Reese* (258 N. Y. 89). That case involved the question of the competency of unauthenticated fingerprint records

of another State. There Chief Judge CARDOZO said: " The rule of confrontation which in this state is purely statutory (Civil Rights Law, § 12; Code Crim. Pro. § 8), has never been deemed to require the exclusion of certificates or records made by a public officer in the course of his official duty " [citing authorities]. To me that declaration by the late Chief Judge does not appear to be determinative of the question here, because the opinion there dealt with the interpretation of a specific section (Code Crim. Pro. § 482-b) which, among other things, provides that fingerprint records of persons convicted of crime " shall be presumptive evidence of the fact of such previous convictions of such defendant." Moreover, the right of confrontation is no longer only statutory, but now has been embodied in the Constitution of the State.

Probably the most recent case considered by the Court of Appeals is *People* v. *Kohlmeyer* (284 N. Y. 366). There the court held that hospital records showing diagnoses of a patient who was the accused's ancestor were admissible on the defense of insanity at the time of the alleged robbery, of which the defendant stood accused. The court there stated: " Hospital records concededly are included within the records to which section 374-a of the Civil Practice Act is applicable. We find no difference in a recorded diagnosis of a physical condition and of a mental condition. It was error, therefore, to exclude from evidence the parts of the hospital records which were not hearsay." In my opinion, the holding in that case is not determinative of the question presented on this application. The *Kohlmeyer* case is distinguishable, for there the accused, and not the People, introduced the records and the defendant's right of confrontation was not involved.

From what has already been said it must be obvious that a novel question is here presented which calls for the attention and contemplation of appellate tribunal. On an application for a certificate of reasonable doubt it is not necessary that the judge to whom the application is made should be satisfied that the judgment will be reversed. It is enough that he is satisfied that a question of law is raised sufficient for the consideration of the appellate tribunal. (*People* v. *Hines*, 12 N. Y. S. 2d 454; *People* v. *Arnstein*, 91 Misc. 177, 185; *People* v. *Kelly*, 127 Misc. 300; *People* v. *Hummel*, 49 Misc. 136; *People* v. *Flaherty*, 110 N. Y. S. 154, 155.)

The District Attorney contends that since other evidence, concededly proper, indicates that the cause of death was an incomplete abortion, the cause of death cannot be considered

one of the contested issues in the case and therefore the defendants were not prejudiced by the autopsy report. That may be so, but it is not my function on this application to determine whether the error complained of warrants the granting of a new trial, for that is a phase of the appeal which only the appellate court can decide. As Mr. Justice TRUAX said in *People* v. *Valentine* (19 Misc. 555, 556): " On such application it is not required that the judge to whom the application is made should determine whether the error complained of warrants the granting of a new trial, for the granting or refusing of a new trial is vested in the appellate court which may ' order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not, in the court below.' Code Crim. Pro., § 527." (Quoted in *People* v. *Hummel,* 49 Misc. 136, *supra,* and in *People* v. *Hines,* 12 N. Y. S. 2d 454, *supra.*)

For the reasons assigned the application is granted. Bail will be fixed upon the settlement of the order. Settle order.