OPINION OF THE COURT
Charles A. Kuffner, Jr., J.
The defendant pleaded guilty to murder in the second degree and received a sentence of 20 years to life. After defendant began serving the sentence he was transferred to the State of Oklahoma pursuant to the Interstate Agreement on Detainers (CPL 580.20) for the purpose of standing trial for another murder. Upon pleading guilty to the murder charge in Oklahoma defendant consented to being executed in accordance with the laws of that State. In order to carry out that sentence, Oklahoma had to first obtain either a waiver of New York’s superseding custodial right under the Agreement on Detainers or a commutation of the sentence pending in this State. Governor Cuomo refused Oklahoma’s preemption request to carry out its sentence of execution first and declined to commute defendant’s sentence. Defendant now moves pursuant to CPL 440.20 to set aside the New York sentence of April 21, 1992 and reimpose the same to run concurrent with or consecutive to the Oklahoma sentence.
In moving pursuant to CPL 440.20 defendant maintains that the New York sentence violates the cruel and unusual punishment proscriptions of article I (§ 5) of the New York Constitution and the Eighth Amendment of the United States Constitution. Essentially, counsel for defendant contends that as a result of the imposition of the Oklahoma death sentence the New York sentence has become far more severe and makes de minimis any potential rehabilitation envisioned by defendant’s New York incarceration. Since there is nothing to gain by continuing the New York sentence, defendant maintains he should be permitted to accommodate Oklahoma’s sentence now thereby avoiding the harshness of languishing in New York for 20 years only to face the same fate at a later time.
The Governor’s exercise of his discretion in refusing to commute defendant’s New York sentence and in steadfastly insisting defendant return to complete the sentence first imposed in this State is clearly a function within the province of the executive branch. (NY Const, art IV, § 4; People ex rel. *86 Page v Brophy, 248 App Div 309, appeal dismissed 277 NY 673.) There is no legal issue before this court concerning the propriety of that decision and the court is without authority to modify, affirm or otherwise pass judgment on the Governor’s discretion or the exercise of the lawful prerogatives of his office without a showing of constitutional infirmity (People ex rel. Forsyth v Court of Sessions, 141 NY 288). No such claim is made by defendant.
What does remain within the parameters of the Separation of Powers Clause is whether this court in light of the development in Oklahoma, on sound legal grounds, and the interest of justice, should vacate the judgment previously entered in this case and resentence defendant to time concurrent with the Oklahoma judgment of execution.
The major argument raised by counsel for defendant is that as a result of the Oklahoma sentence defendant would suffer cruel and unusual punishment were he compelled to serve the minimum of his sentence here before he could be transferred to Oklahoma for execution. Counsel does not raise the practical consideration of the enormous expense incurred for housing defendant in a New York penitentiary for 20 years, which argument caused substantial debate within the public forum when the issue emerged several months ago.
The court initially notes that to determine the question presented upon financial considerations would only shortchange our system of criminal justice and threaten the court’s independence with monetary concerns. Legal disputes must perforce be decided upon sound legal reasoning and not influenced by the pressure of public sentiment. (Code of Judicial Conduct Canons 1, 2.)
To permit the defendant to withdraw his previously entered plea of guilty or suspend sentence and allow him to return to Oklahoma so that State may exercise its sentence would undermine the sentencing procedures of New York State and the sanctity of New York law which has priority under the compact between the States.
Any potential choice defendant had between these sentences was effectively eliminated when he pleaded guilty to murder in the second degree in New York State and received a sentence of 20 years to life. A sentence of 20 years to life is not cruel or unusual (Harmelin v Michigan, 501 US 957) and cannot be made so by the subsequent sentencing policy of another jurisdiction any more than a change in the law can *87 interfere with the execution of sentence. (People ex rel. Emanuel v Quinn, 66 AD2d 905, 906, appeal dismissed 48 NY2d 1025.) The predicament defendant now finds himself in is a creature of his own miscalculations and wrongdoing which have no bearing upon the legality of the sentence originally imposed by this court and bargained for by defendant. (People v Boatwright, 159 AD2d 510, lv denied 76 NY2d 785.)
More compelling than the inconvenience to the defendant, the issues raised in this application concern the integrity of the court’s sentencing process and the application of the laws of the State of New York. A sentencing proceeding inherently proper and legal when imposed cannot be rendered legally insufficient because of the imposition of another State’s sentence. The question has nothing to do with the death sentence as a proper measure of the State’s power in extracting a penalty for a capital offense. The public policy of each State may be different on the issue, but the integrity of each State’s laws must be held inviolate. If the sovereignty of a State encompasses an absolute right within certain constitutional proscriptions to determine for itself what principles of justice and fair dealings are to govern, then this right may not be abridged by the laws of a sister State. This principle has its origin in comity which has long been recognized as a sound and proper jurisprudential rule governing the full faith and credit to be given the laws of sister States within the union of our Nation.
Just as the courts of this State are zealous guardians of their independence and will not permit public opinion or political preferences to interfere with the sound legal reasoning of its decisions, so too must the statutory laws of this State stand upon the wise and considered decisions of the Legislature in responsibly exercising their constitutional authority when setting sentencing guidelines within which the courts operate. Unless a violation of some constitutional prohibition is evident, this court is bound to impose the sanctions permitted in a given case according to applicable sentencing requirements.
There is nothing in the record of this court’s sentence which would substantiate a finding of illegality or constitutional impairment. The plea of guilty was taken after an allocution by the defendant that acknowledged the full extent of his rights and an intelligent and knowing waiver of these rights with the assistance of and in the presence of counsel. The sentence was rendered after the court obtained a probation *88 report which was shared with counsel for defendant and the Assistant District Attorney. All interested parties had an opportunity to make statements to the court before sentence was imposed. Indeed, defendant made his feelings known.
Defendant has completely failed to demonstrate any statutory basis to set aside the sentence.
As noted previously, defendant was transferred to Oklahoma to face the murder charges pending in that jurisdiction pursuant to the Agreement on Detainers. The purpose of this interstate detainer agreement is to "encourage the expeditious and orderly disposition of such [criminal] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints” (CPL 580.20, art I). Whether the defendant initiates the request for disposition of the charges pending in another State (CPL 580.20, art III), or the demanding State sets in motion the operative aspects of this law (CPL 580.20, art IV), the responsibility of the States is unequivocally defined.
Pursuant to article V (a) of the Agreement on Detainers the sending State "shall offer to deliver temporary custody” of the prisoner. The phrase "temporary custody” appears with sufficient repetitiveness throughout the statute as to make the legislative intent unmistakable.
In subdivision (e), the only provision in article V where the phrase "temporary custody” does not appear, the language is otherwise emphatic: "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state.”
Whether the provisions concerning temporary custody and returning a prisoner to the sending State are waivable with the acquiescence of all interested parties is moot, since the Governor has exercised his prerogative and demanded defendant’s return to New York State. (Cf., State of New York v Poe, 835 F Supp 585.)
A curious anomaly is posed by defendant’s resentence application.
Leslie Holtz, age 82, was murdered in his room during a robbery. The felony murder coincided with Social Security day, July 3, 1991. When the body was discovered two days later, Mr. Holtz appeared to be in a kneeling position, head up, with face and head trauma and an electrical cord wrapped five times around his neck. The crime scene photos confirmed *89 the position of the body and that a struggle took place in the room.
The defendant’s own statement as to how he murdered the senior citizen adds that Mr. Holtz was stomped by the codefendant because the victim put his hands together as if to pray. Undeterred, the murderer continued to choke his victim until he was satisfied that death occurred.
The killer pleads that he "will be required to endure the minimum period of incarceration of twenty years, before being delivered to Oklahoma for execution.” The words "harshness”, "severe punishment” and "cruel and unusual punishment” ring hollow in light of the harsh, cruel and severe crime inflicted on Mr. Holtz.
Defendant’s application is almost a perverse mercy plea by the murderer. The sentence originally imposed was in no way motivated by any other purpose than to punish the defendant for his horrid crime and to make sure society was protected from the likes of this man for at least 20 years. Those are legitimate sentencing concerns given Mr. Holtz’s murder and the way it was carried out. No mercy was shown the victim, no mercy will be shown the killer.
Likewise, defendant would have a Justice in a State where the death penalty does not exist set aside its sentence in order to facilitate a death sentence in another jurisdiction. While this court does not review or pass judgment upon the propriety of Oklahoma’s constitutional judicial and legislative decisions, the dichotomy between New York and Oklahoma’s public policy regarding the death sentence is acutely apparent. Only defendant’s interests, not the interests of justice, would be served were this court to grant the application. To permit resentencing in the matter before this court would be tantamount to facilitating State-sponsored suicide in direct contravention of this State’s clear policy considerations regarding the death penalty.
Stated differently, were resentencing permitted the court would be justifying a violation of this State’s public policy on facilitating suicide and the imposition of the death penalty by relying upon the accepted policy in Oklahoma.
Clearing aside the rhetoric and ignoring the public attention defendant has sought to focus upon his asserted plight, there remains nothing persuasive in defendant’s argument. *90 Defendant does not have the luxury, nor should he be permitted, to manipulate the sentencing procedures as if he was making a selection from a menu.
The motion to set aside the sentence is denied.